**Exhibit A**

Proof of Claim 6512

| UNITED STATES BANKRUPTCY COURT Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Northern New England Telephone Operations LLC | Case Number:<br>09-16365-BRL |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>seqNET Technologies, Inc. | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>Perkins Coie LLP<br>c/o Jeanette L. Thomas<br>1120 NW Couch St., 10th Fl., Portland, OR 97209<br><br>Telephone number:<br>(503) 727-2000 | **Court Claim Number:** _____<br>(*If known*)<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br><br><br>RECEIVED<br>MAR 18 2010<br>BMC GROUP<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $ **See attached**<br><br>If all or part of your claim is secured, complete item 4 below; however, if all or part of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:** Services provided<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **3.** Last four digits of any number by which creditor identifies debtor: _____<br><br>   **3a.** Debtor may have scheduled account as: _____<br>     (See instruction #3a on reverse side.) | |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other<br>**Describe:**<br><br>**Value of Property:** $_____ **Annual Interest Rate** _____%<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>if any: $_____ **Basis for perfection:** _____<br><br>**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>**Amount entitled to priority:**<br><br>$_____<br><br>**Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | |
|---|---|
| **Date:**<br>03/17/2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Jeanette L. Thomas, Attorney for Claimant | **FOR COURT USE ONLY**<br>FairPoint Comm. Inc.<br><br>06512 |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## I.     Background

On October 26, 2009 (the "Petition Date"), FairPoint Communications and all of its direct and indirect subsidiaries (collectively, the "Debtors"), including Northern New England Telephone Operations LLC ("NNETO"), filed voluntary petitions for relief with the United States Bankruptcy Court for the Southern District of New York.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Prior to the Petition Date, segNET Technologies, Inc. ("segNET") "), an Internet service provider, purchased services from Verizon New England, Inc. ("Verizon").  In January, 2007 Verizon and certain of its affiliates sold a portion of their business (*i.e.* the landline operations in Maine, New Hampshire and Vermont) to FairPoint Communications, Inc. ("FairPoint").  In Maine and New Hampshire, FairPoint entity now operating the landline services is NNETO. segNET operates in Maine, New Hampshire and Vermont and subsequently began purchasing services from NNETO.

## II.    Claims

segNET has claims against NNETO under several legal grounds.  Each is summarized below.

### A.    Refunds due for Credit Balance

These are cases where segNET has a positive credit balance due to resolved disputes or overpayments with NNETO on invoices, some of which are on closed accounts and NNETO has failed to refund the amount to segNET.  The aggregate amount owed to segNET for these refund amounts is $3,281.83.

### B.    Outage Credits Due under FCC or State Tariff

There have been outage periods with respect to services that segNET purchased and paid for from NNETO.  Pursuant to its applicable state and federal tariffs, NNETO is required to provide segNET credits for those outage periods, which NNETO has not provided.  These claims are for the credits to be made to the accounts.  A complete list of dates, the type of service, length of outage, complete identification of affected circuits and amount of credit has been provided to NNETO in the normal dispute process.  The total amount owed under this claim is $7,250.41, which segNET is entitled to offset against any amounts owed by it to NNETO.

### C.    Disputes

segNET has disputed charges imposed by NNETO for failure to remove cancelled circuits, or other reasons, and has withheld payment for these disputed charges.  Complete details

of these disputes were provided in a timely manner to NNETO. segNET is entitled to $36,052.80, which it is entitled to offset against any amounts owed by it to NNETO.

D.   Competitive Violation Claims

NNETO has breached and violated a number of obligations owed to segNET under the terms of state and federal tariffs, and federal statutes and regulations, all of which have harmed segNET as a competitive telecommunications provider. These breaches and violations include the following:

1.   NNETO has failed to provide a working platform for conversion of services to resale platforms which has impeded segTEL's ability to order services for resale to its customers and to provision such service to its customers. segNET has been damaged in the amount of $22,400 by these breaches and violations, based upon lost revenue during the period ordering services and provisioning services was delayed and not performed, plus additional amounts incurred after the Petition Date.

2.   NNETO has been unable or has refused to convert special access T-1 lines leased from NNETO to unbundled network elements or to resale, which segNET's affiliate segTEL tried to order, in violation of its tariffs and 47 U.S.C. § 251. segNET's affiliate segTEL has repeatedly tried to order these conversions from NNETO. As a result, segNET has been unable to convert from being a FairPoint customer to being a segTEL customer for such services and has, therefore, incurred higher costs for services it purchased. segNET has been damaged in the amount of $58,880 by these breaches and violations, based upon the additional cost segNET has incurred to purchase these services from NNETO to the extent that exceeds what it would pay to segTEL for such services, plus additional amounts incurred after the Petition Date.

E.   Total Owing.

As a result, as of October 26, 2009, the total amount owed to segNET is no less than $127,865.04. Additionally, segNET expects that it will incur additional legal expenses that are reimbursable under applicable law.

III.   **Inappropriate Amounts Claimed by NNETO**

The following amounts are amounts that NNETO claims are owed by segNET. segNET believes that these amounts needs to be resolved in connection with the claim allowance process to prevent NNETO from asserting a right of setoff or from continuing inappropriate collection efforts, which would give rise to additional claims on behalf of segNET.

A.   Amounts Billed or Due to be Refunded Pursuant to Settlement Agreement

In June of 2008 segNET, Verizon, and FairPoint, including representatives of NNETO entered into a settlement agreement approved by the US District Court of Massachusetts that required FairPoint to take certain actions. NNETO has, to this date, failed in several instances to implement the terms of the Settlement Agreement. segNET's claims for these actions and

omissions totals $15,657.04. The terms and conditions of the settlement agreement are subject to non-disclosure agreement between the parties and the agreement is in the possession of NNETO.

Additionally, NNETO has continued to invoice late payment charges and other fees to segNET both prior to and after the Petition Date on claims that were barred and released by the Settlement Agreement. The aggregate amount inappropriately billed by NNETO is $20,469.28.

As a result, as of October 26, 2009, the total amount inappropriately invoiced to segNET is no less than $36,126.32. Additionally, segNET expects that it will incur additional legal expenses that are reimbursable under applicable law.

## IV. Reservation of Rights

segNET specifically reserves the right to enforce and amend this claim if necessary to include all amounts due on account of provisions for the payment of additional charges, future interest, and all other costs to which it is entitled. segNET also reserves all rights to amend this proof of claim to reflect any additional amounts that may become due and owing. Additionally, segNET reserves all rights it has to assert as a defense, counterclaim, offset or recoupment, or otherwise, all amounts that have been listed on any and all bills received from NNETO prior to the Petition Date as credits in from NNETO to segNET.

## V. Confidential and Proprietary Information

The Proof of Claim is based, in part, on documents containing commercially sensitive and proprietary information. The underlying agreements and invoices are in the possession of the Debtors and will be made available upon request to other parties-in-interest who execute a confidentiality agreement in a form acceptable to segNET and who demonstrate a legitimate need for such information in the sole discretion of segNET or as otherwise determined by the Bankruptcy Court.

## VI. No Waiver/Release

The filing of this Proof of Claim shall not constitute: (a) a waiver or release of segNET's rights (whether arising under an agreement or applicable law) against NNETO, any of the Debtors, or any other person, (b) a consent by segNET to the jurisdiction of this Court with respect to the subject matter of the claims set forth in this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving segNET, (c) a waiver or release of any right of segNET, or consent by segNET, to a trial by jury in the Bankruptcy Court or any other court in any proceeding, (d) a waiver or release of, or any other limitation on, any right of segNET to have any orders entered only after de novo review by a United States District Judge, (e) an election of remedies, (f) a waiver of, or any other limitation on, any right of segNET to request withdrawal of the reference with respect to any matter, including, without limitation, any matter relating to this proof of claim or (g) a waiver or release of, or any other limitation on, any right of segNET to assert that any portion of its claim against is entitled to treatment as an administrative priority claim pursuant to Sections 503(b), 507(a)(1) or 507(b) of the Bankruptcy Code. segNET expressly reserves the right to file one or more requests for payment of administrative expenses

in connection with any portion of the claims asserted herein or otherwise arising under the applicable law.

Proof of Claim 6513

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Northern New England Telephone Operations LLC | Case Number:<br>09-16365-BRL |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
segTEL, Inc.

Name and address where notices should be sent:
Perkins Coie LLP
c/o Jeanette L. Thomas
1120 NW Couch St., 10th Fl., Portland, OR 97209

Telephone number:
(503) 727-2000

Name and address where payment should be sent (if different from above):

RECEIVED

MAR 1 8 2010

BMC GROUP

Telephone number:

❏ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
(*If known*)

Filed on:_____

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

❏ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ **See attached**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Services provided
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ❏ Real Estate   ❏ Motor Vehicle   ❏ Other
**Describe:**

**Value of Property:** $_____   **Annual Interest Rate**_____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____   **Basis for perfection:** _____

**Amount of Secured Claim:** $_____   **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

❏ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

❏ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| **Date:**<br>03/17/2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Jeanette L. Thomas, Attorney for Claimant | **FOR COURT USE ONLY**<br>FairPoint Comm. Inc.<br><br>06513 |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

## I.    Background

On October 26, 2009 (the "Petition Date"), FairPoint Communications, Inc. and all of its direct and indirect subsidiaries (collectively, the "Debtors"), including Northern New England Telephone Operations LLC ("NNETO"), filed voluntary petitions for relief with the United States Bankruptcy Court for the Southern District of New York. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Prior to the Petition Date, segTEL, Inc. ("segTEL"), a competitive local exchange carrier and public utility, purchased and provided services from and to Verizon New England, Inc. ("Verizon"). In January, 2007 Verizon and certain of its affiliates sold a portion of their business (*i.e.* the landline operations in Maine, New Hampshire and Vermont) to FairPoint Communications, Inc. ("FairPoint"). segTEL operates in Maine, New Hampshire and Vermont and subsequently began purchasing services from NNETO and providing services to NNETO.

## II.    Amounts Owed to segTEL

segTEL has claims against NNETO under several legal grounds. Each is summarized below.

### A.    Refunds due for Credit Balance

These are cases where segTEL has a positive credit balance due to resolved disputes or overpayments with NNETO on invoices, some of which are associated with closed accounts and NNETO has failed to refund the amount to segTEL. The aggregate amount owed to segTEL for these refund amounts is $288,757.02.

### B.    Penalty Interest due segTEL

These are cases where under the applicable tariff or interconnection agreement ("ICA") segTEL has paid an invalid charge and disputed said charge, where the underlying validity of the dispute has been acknowledged and credited by NNETO, but where NNETO has failed to pay penalty interest (1.5%/month compound) in segTEL's favor as required under the tariff/ICA. The aggregate amount owed for penalty interest is $17,462.06.

### C.    Unpaid segTEL Bills

These are invoices that segTEL has remitted to NNETO for services rendered pursuant to segTEL's filed tariffs and rate sheets prior to the Petition Date, including amounts owed under invoices that have open balances and remained unpaid as of the Petition Date, as well as amounts owed for services prior to the Petition Date that were invoiced subsequent to the bankruptcy filing. The aggregate amount owed for these services is $65,343.14.

D.    Performance Assurance Plan Credits

In connection with the application of the predecessor of NNETO under 47 U.S.C. § 271, NNETO operates in the states of Maine and New Hampshire under Performance Assurance Plans ("PAP") by order of the state regulatory agencies of each state and by the Federal Communications Commission ("FCC"). The predecessor's development and execution of the PAP was approved and audited by the FCC, and by regulators in Pennsylvania, New York and Massachusetts, among others. By orders of the Maine and New Hampshire Public Utilities Commissions and the FCC, NNETO was required to adopt the predecessor's PAP. The PAP is intended to assure NNETO's performance of its obligations under 47 U.S.C. § 251 and 47 U.S.C. § 271, and requires payments and credits in the event of breaches or violations of certain obligations. segTEL is entitled to credits under the PAP.

1.    Between acquisition (April 1, 2008) and February, 2009, NNETO failed to provide required PAP reports, and, as a result, failed to provide credits under the PAP despite repeated severe breaches and violations of its obligations under 47 U.S.C. § 251 and 47 U.S.C. § 271. The total amount of credits segTEL claims NNETO failed to calculate and credit is $1,106,796.

2.    In February, 2009, NNETO began to provide unaudited PAP reports on a regular basis, each of which specified credits due to segTEL for NNETO's repeated and severe breaches and violations of its obligations under 47 U.S.C. § 251 and 47 U.S.C. § 271. In some instances, NNETO failed to credit segTEL these amounts. The total amount owed for this category is $141,713.29.

3.    In some instances, NNETO has misapplied PAP credits and failed to correct the misapplication of credits under the PAP. The total amount of credits that have been misapplied and not corrected is $247,792.02.

4.    The PAP developed and implemented by NNETO has not been submitted for review or audit to the Public Utility Commissions of Maine and New Hampshire nor the FCC. segTEL has requested such review and audit, and reserved its rights to a true-up of amounts owed under the PAP should such review and audit show that NNETO has misrepresented its performance. segTEL's claim in this category is no less than $389,279.64.

E.    Competitive Violation Claims

NNETO has breached and violated a number of obligations owed to segTEL under the terms of state and federal tariffs, interconnection agreements, pole attachment agreements, and federal statutes and regulations including 47 U.S.C. § 251, all of which have harmed segTEL as a competitive telecommunications provider. These breaches and violations include the following:

1.    segTEL has made requests to NNETO to bring fiber optic cables into NNETO's central offices in New Hampshire as required by state and federal law and NNETO's tariffs. NNETO has delayed or failed to provide adequate information for segTEL to prepare the fiber cables and has further delayed and failed to bring the fiber cables into its central offices in violation of its tariffs and 47 U.S.C. § 251. segTEL has

been damaged in the amount of $135,000 by these breaches and violations, based upon the cost to purchase alternative services and lost revenue during the period the work was delayed and not performed, plus additional amounts incurred after the Petition Date.

2. NNETO has failed to provide segTEL access to certain unbundled network elements ("UNEs") on terms and conditions that are competitively neutral and non-discriminatory or in a timely manner in violation of 47 U.S.C. § 251, its tariffs and interconnection agreements, as applicable, in New Hampshire and Maine. segTEL has been damaged in the amount of $40,000 by these breaches and violations, based upon the cost to purchase alternative services and lost revenue during the period when these services were not provided or were delayed, plus additional amounts incurred after the Petition Date.

3. NNETO has delayed and failed to provide required survey and make-ready work for segTEL to install facilities in conduit and on poles owned by NNETO in New Hampshire in violation of pole attachment agreements, and its obligations under state and federal law including 47 U.S.C. § 224. segTEL has been damaged in the amount of $120,000 by these breaches and violations, based upon the cost to purchase alternative services and lost revenue during the period the work was delayed and not performed, plus additional amounts incurred after the Petition Date.

4. NNETO has delayed and refused to allow segTEL to construct manhole breakouts as necessary to configure and construct segTEL's network and to serve customers, in violation of pole attachment agreements, conduit agreements, 47 U.S.C. § 224, and 47 U.S.C. § 251 and state law. segTEL has been damaged in the amount of $35,000 by these breaches and violations, based upon the cost to purchase alternative services and lost revenue during the period the work was delayed and not performed, plus additional amounts incurred after the Petition Date.

5. NNETO has delayed in processing segTEL's applications for pole attachment licenses in some areas of New Hampshire, in violation of its pole attachment agreements and 47 U.S.C. § 224. segTEL has been damaged in the amount of $24,000 by these breaches and violations, based upon the cost to purchase alternative services during the period the work was delayed and not performed, plus additional amounts incurred after the Petition Date.

6. NNETO did not have a working Operations Support System for processing segTEL's orders in New Hampshire for a period of at least three months, in violation of 47 U.S.C. § 251, 47 U.S.C. § 271 and its tariffs. segTEL has been damaged in the amount of $32,000 by these breaches and violations, based upon lost revenue during the period ordering services and provisioning services was delayed and not performed, plus additional amounts incurred after the Petition Date.

7. NNETO has not had adequate software, tools, or equipment to qualify its loops as DSL-capable in New Hampshire in violation of 47 U.S.C. § 251 and its tariffs. segTEL has been damaged in the amount of $48,000 by these breaches and violations,

based upon lost revenue during the period ordering services and provisioning services was delayed and not performed, plus additional amounts incurred after the Petition Date.

8.    NNETO has not had adequate procedures, equipment and systems for processing segTEL's applications for collocation in New Hampshire, and has delayed processing such applications, in violation of 47 U.S.C. § 251 and its tariffs. segTEL has been damaged in the amount of $60,000 by these breaches and violations, based upon the cost to purchase alternative services and lost revenue during the period when these services were not provided or were delayed, plus additional amounts incurred after the Petition Date.

9.    NNETO has engaged in pricing for rental fees for access to poles, ducts, conduits, and rights-of-way in certain municipalities within New Hampshire that is discriminatory and not competitively neutral, in violation of 47 U.S.C. § 224 and state law. segTEL has been damaged in the amount of $106,562 by these breaches and violations, based on the payment of rates that are discriminatory and not competitively neutral.

10.   NNETO has engaged in pricing for make-ready work and processing applications for access to poles, ducts, conduits, and rights-of-way in specific locations in New Hampshire that is discriminatory and not competitively neutral, in violation of 47 U.S.C. § 224 and state law. NNETO has also failed to refund amounts segTEL prepaid for such work to the extent the amount of the prepayment exceeded the actual cost of the work or where the work was not performed, in violation of pole attachment agreements. segTEL has been damaged in the amount of $176,000 by these breaches and violations, plus additional amounts incurred after the Petition Date.

11.   NNETO has failed to provide a working platform for resale which has impeded segTEL's ability to order services for resale to its customers and to provision such service to its customers, in violation of 47 U.S.C. § 251, its tariffs and interconnection agreements. segTEL has been damaged in the amount of $22,400 by these breaches and violations, plus additional amounts incurred after the Petition Date.

12.   NNETO has failed to provide a working platform for DSL resale and other resale services which has impeded segTEL's ability to order DSL service for resale to its customers and to provision such service to its customers, in violation of 47 U.S.C. § 251, its tariffs, and interconnection agreements. segTEL has been damaged in the amount of $8,000.00 by these breaches and violations, based upon lost revenue during the period ordering services and provisioning services was delayed and not performed, plus additional amounts incurred after the Petition Date.

13.   NNETO has failed to provide a working platform for Special Access to Unbundled Network Element conversions, in violation of 47 U.S.C. 251 and state law. segTEL has been damaged in the amount of $108,800 by these breaches and violations, plus additional amounts incurred after the Petition Date.

F.    Anti-Competitive and Tortious Conduct

NNETO has engaged in other anti-competitive and tortious conduct in New Hampshire which has damaged segTEL as a competitor, in violation of NNETO's duties under New Hampshire law and under 47 U.S.C. § 251, 47 U.S.C. § 271, FCC regulations, its tariffs, and interconnection agreements.  This includes the following:

1.    NNETO has used information that segTEL provided in connection with reporting FairPoint network problems and other customer service issues to solicit segTEL's customers to leave segTEL and become customers of NNETO.  This has involved improper use of Customer Proprietary Network Information and Carrier Proprietary Information in violation of 47 U.S.C. § 222, FCC regulations, and its tariffs, and tortious interference with segTEL's relationships with its existing customers and prospective customers.  segTEL has been damaged in the amount of $96,000 by these breaches and violations, plus additional amounts incurred after the Petition Date.

2.    NNETO has slandered segTEL and tortiously interfered with segTEL's relationships with its existing customers and prospective customers in the towns of North Conway, Sunapee, and Lyme, New Hampshire by making false and defamatory allegations of criminal activity, defective or deficient equipment and services, and in other respects, which has caused segTEL to lose the business of some of its customers.  segTEL has been damaged in the amount of $165,000 by this conduct, plus additional amounts incurred after the Petition Date.

G.    Total Owing

As a result, as of October 26, 2009, the total amount owed to segTEL is no less than $3,431,169.26.  Additionally, segTEL expects that it will incur additional legal expenses that are reimbursable under applicable law.

III.    Inappropriate Amounts Claimed by NNETO

The following amounts are amounts that NNETO claims are owed by segTEL.  segTEL believes that these amounts needs to be resolved in connection with the claim allowance process to prevent NNETO from asserting a right of setoff or from continuing inappropriate collection efforts, which would give rise to additional claims on behalf of segTEL.

A.    Amounts Barred by Tariffs, Agreements, Statutes of Limitation, and Regulations

NNETO has and continues to invoice segTEL for charges that have been previously disputed by segTEL.  Under applicable federal and state statutes and regulations, tariffs, and ICAs, provide full and final resolution and assert its claims within the statutory bar period or the underlying invoiced amount is destroyed and extinguished.  Under the appropriate statute of limitations (including but not limited to Section 415(a) of the Communications Act, and the state law equivalents), NNETO is barred from seeking payment for such charges.  Notwithstanding that fact, NNETO has continued to bill segTEL for such amounts.  The total amount of such charges is $414,286.76.

Further, NNETO continues to invoice and collect on invoices more than two years old, invoices which segTEL records show as paid. These open balances, whether disputed or not, are barred from collection by the statute of limitations. The total amount of these open invoices is $47,930.61.

Notwithstanding all amounts barred by the relevant Statutes of Limitations, any and all amounts within this section are additionally disputed on the basis of the invoicing being (a) incorrect, (b) unsupportable, and/or (c) invalid under the applicable tariff, SGAT, ICA, or contract.

B.    Disputed Charges

For pre-petition periods not barred by the applicable Statute of Limitations (above) NNETO has and continues to invoice segTEL for charges that have been previously disputed by segTEL. segTEL has disputed these charges on a variety of grounds, including, without limitation, the following: (a) the amounts are incorrect, (b) the amounts are unsupportable, (c) the amounts are invalid under applicable tariff, Statement of Generally Applicable Terms ("SGAT"), ICA, or contract. The total amount of the disputed charges is $105,564.09.

In addition, NNETO has and continues to invoice segTEL for charges that have been previously disputed by segTEL for DSL services. segTEL has disputed these charges on a variety of grounds, including, without limitation, the following: (a) the amounts are incorrect, (b) the amounts are unsupportable, (c) the amounts are invalid under applicable tariff or contract. The total amount of the disputed charges for DSL is $36,815.71

C.    Payments Incorrectly Applied

segTEL has made payments to NNETO on account of services provided and pursuant to invoices received. Certain of these payments have been either not applied or inappropriately applied by NNETO to the incorrect invoice, including, in some cases, to accounts of other third parties. Despite repeated attempts to reconcile these errors, many such misapplied payments remain outstanding. The total amount of such unapplied payments is $669,243.02.

D.    Resolved But Uncredited Disputes

NNETO has and continues to invoice segTEL for charges that have been previously disputed by segTEL and resolved by the parties. segTEL disputed these charges on a variety of grounds and the parties were able to reach agreement on the validity of certain amounts but NNETO has failed to credit segTEL's accounts for these amounts. Accordingly segTEL is invoiced for these amounts each month and late fees and interest are accruing on these amounts. The total amount of such resolved amounts is $25,258.41.

E.    Total Inappropriate Charges

As a result, as of October 26, 2009, the total amount inappropriately invoiced to segTEL is no less than $1,329,089.60. Additionally, segTEL expects that it will incur additional legal expenses that are reimbursable under applicable law.

## IV.    Reservation of Rights

segTEL specifically reserves the right to enforce and amend this claim if necessary to include all amounts due on account of provisions for the payment of additional charges, future interest, and all other costs to which it is entitled.  segTEL also reserves all rights to amend this proof of claim to reflect any additional amounts that may become due and owing.  Additionally, segTEL reserves all rights it has to assert as a defense, counterclaim, offset or recoupment, or otherwise, all amounts that have been listed on any and all bills received from NNETO prior to the Petition Date as credits in from NNETO to segTEL.

## V.    Confidential and Proprietary Information

The Proof of Claim is based, in part, on documents containing commercially sensitive and proprietary information, including information relating to segTEL's customers.  The underlying agreements and invoices are in the possession of the Debtors and will be made available upon request to other parties-in-interest who execute a confidentiality agreement in a form acceptable to segTEL and who demonstrate a legitimate need for such information in the sole discretion of segTEL or as otherwise determined by the Bankruptcy Court.

## VI.    No Waiver/Release

The filing of this Proof of Claim shall not constitute: (a) a waiver or release of segTEL's rights (whether arising under an agreement or applicable law) against NNETO, any of the Debtors, or any other person, (b) a consent by segTEL to the jurisdiction of this Court with respect to the subject matter of the claims set forth in this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving segTEL, (c) a waiver or release of any right of segTEL, or consent by segTEL, to a trial by jury in the Bankruptcy Court or any other court in any proceeding, (d) a waiver or release of, or any other limitation on, any right of segTEL to have any orders entered only after de novo review by a United States District Judge, (e) an election of remedies, (f) a waiver of, or any other limitation on, any right of segTEL to request withdrawal of the reference with respect to any matter, including, without limitation, any matter relating to this proof of claim or (g) a waiver or release of, or any other limitation on, any right of segTEL to assert that any portion of its claim against is entitled to treatment as an administrative priority claim pursuant to Sections 503(b), 507(a)(1) or 507(b) of the Bankruptcy Code.  segTEL expressly reserves the right to file one or more requests for payment of administrative expenses in connection with any portion of the claims asserted herein or otherwise arising under the applicable law.

Proof of Claim 6514

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Telephone Operting Company of Vermont LLC | Case Number:<br>09-16410-BRL |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>seqNET Technologies, Inc.<br><br>Name and address where notices should be sent:<br><br>Perkins Coie LLP<br>c/o Jeanette L. Thomas<br>1120 NW Couch, St., 10th Fl, Portland, OR 97209<br><br>Telephone number:<br>(503) 727-2000 | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br>RECEIVED<br>MAR 1 8 2010<br>BMC GROUP<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. **Amount of Claim as of Date Case Filed:** $ **See attached**<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 2. **Basis for Claim:** Services provided<br>(See instruction #2 on reverse side.) | |
| 3. **Last four digits of any number by which creditor identifies debtor:** _____<br><br>    **3a. Debtor may have scheduled account as:** _____<br>    (See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 4. **Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:<br><br>Value of Property:$_____   Annual Interest Rate_____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $_____   Basis for perfection: _____<br><br>Amount of Secured Claim: $_____   Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). |
| 6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| 7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>**Amount entitled to priority:**<br><br>$_____<br><br>**Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date:<br>03/17/2010 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Jeanette L. Thomas, Attorney for Claimant | *FairPoint Comm. Inc.*<br>[barcode]<br>06514 |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**EXHIBIT A to segNET Technologies, Inc. Claim**
In re Telephone Operating Company of Vermont LLC
Chapter 11 Case No. 09-16410-BRL

## I.     Background

On October 26, 2009 (the "Petition Date"), FairPoint Communications and all of its direct and indirect subsidiaries (collectively, the "Debtors"), including Telephone Operating Company of Vermont LLC ("TOCV"), filed a voluntary petitions for relief with the United States Bankruptcy Court for the Southern District of New York. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Prior to the Petition Date, segNET Technologies, Inc. ("segNET"), an Internet service provider, purchased services from Verizon New England, Inc., d/b/a Verizon Vermont ("Verizon"). In January, 2007 Verizon and certain of its affiliates sold a portion of their business (*i.e.*, the landline operations in Maine, New Hampshire and Vermont) to FairPoint Communications, Inc. ("FairPoint"). In Vermont the FairPoint entity now operating the landline services is TOCV. segNET operates in Maine, New Hampshire and Vermont and subsequently began purchasing services from TOCV.

## II.    Claims

segNET has claims against TOCV under several legal grounds. Each is summarized below.

### A.     Refunds due for Credit Balance

These are cases where segNET has a positive credit balance due to resolved disputes or overpayments with TOCV on invoices, some of which are on closed accounts, and TOCV has failed to refund the amount to segNET. The aggregate amount owed to segNET for these refund amounts is $6,530.16.

### B.     Outage Credits Due under FCC or State Tariff

There have been outage periods with respect to services that segNET purchased and paid for from TOCV. Pursuant to its applicable state and federal tariffs, TOCV is required to provide segNET credits for those outage periods, which TOCV has not provided. These claims are for the credits to be made to the accounts. A complete list of dates, the type of service, length of outage, complete identification of affected circuits and amount of credit has been provided to TOCV in the normal dispute process. The total amount owed under this claim is $2,551.83, which segNET is entitled to offset against any amounts owed by it to TOCV.

### C.     Disputes

segNET has disputed charges imposed by TOCV for failure to remove cancelled circuits, or other reasons, and has withheld payment for these disputed charges. Complete details of these

disputes were provided in a timely manner to TOCV. segNET is entitled to $12,358.19, which it is entitled to offset against any amounts owed by it to TOCV.

      D.    <u>Total Owing</u>

As a result, as of October 26, 2009, the total amount owed to segNET is no less than $21,440.18. Additionally, segNET expects that it will incur additional legal expenses that are reimbursable under applicable law.

## III.    Inappropriate Amounts Claimed by TOCV

The following amounts are amounts that TOCV claims are owed by segNET. segNET believes that these amounts needs to be resolved in connection with the claim allowance process to prevent TOCV from asserting a right of setoff or from continuing inappropriate collection efforts, which would give rise to additional claims on behalf of segNET.

      A.    <u>Amounts Billed or Due to be Refunded Pursuant to Settlement Agreement</u>

In June of 2008 segNET, Verizon, and FairPoint, including representatives of TOCV entered into a settlement agreement approved by the US District Court of Massachusetts that required FairPoint to take certain actions. TOCV has, to this date, failed in several instances to implement the terms of the Settlement Agreement. segNET's claims for these actions and omissions totals $10,991.75. The terms and conditions of the settlement agreement are subject to non-disclosure agreement between the parties and the agreement is in the possession of TOCV.

Additionally, TOCV has continued to invoice late payment charges and other fees to segNET both prior to and after the Petition Date on claims that were barred and released by the Settlement Agreement. The aggregate amount inappropriately billed by TOCV is $3,249.93.

As a result, as of October 26, 2009, the total amount inappropriately invoiced to segNET is no less than $14,161.68. Additionally, segNET expects that it will incur additional legal expenses that are reimbursable under applicable law.

## IV.    Reservation of Rights

segNET specifically reserves the right to enforce and amend this claim if necessary to include all amounts due on account of provisions for the payment of additional charges, future interest, and all other costs to which it is entitled. segNET also reserves all rights to amend this proof of claim to reflect any additional amounts that may become due and owing. Additionally, segNET reserves all rights it has to assert as a defense, counterclaim, offset or recoupment, or otherwise, all amounts that have been listed on any and all bills received from TOCV prior to the Petition Date as credits in from TOCV to segNET.

## V.    Confidential and Proprietary Information

The Proof of Claim is based, in part, on documents containing commercially sensitive and proprietary information. The underlying agreements and invoices are in the possession of the Debtors and will be made available upon request to other parties-in-interest who execute a

confidentiality agreement in a form acceptable to segNET and who demonstrate a legitimate need for such information in the sole discretion of segNET or as otherwise determined by the Bankruptcy Court.

## VI.    No Waiver/Release

The filing of this Proof of Claim shall not constitute: (a) a waiver or release of segNET's rights (whether arising under an agreement or applicable law) against TOCV, any of the Debtors, or any other person, (b) a consent by segNET to the jurisdiction of this Court with respect to the subject matter of the claims set forth in this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving segNET, (c) a waiver or release of any right of segNET, or consent by segNET, to a trial by jury in the Bankruptcy Court or any other court in any proceeding, (d) a waiver or release of, or any other limitation on, any right of segNET to have any orders entered only after de novo review by a United States District Judge, (e) an election of remedies, (f) a waiver of, or any other limitation on, any right of segNET to request withdrawal of the reference with respect to any matter, including, without limitation, any matter relating to this proof of claim or (g) a waiver or release of, or any other limitation on, any right of segNET to assert that any portion of its claim against is entitled to treatment as an administrative priority claim pursuant to Sections 503(b), 507(a)(1) or 507(b) of the Bankruptcy Code. segNET expressly reserves the right to file one or more requests for payment of administrative expenses in connection with any portion of the claims asserted herein or otherwise arising under the applicable law.

42512-0004/LEGAL17911357.4

Proof of Claim 6515

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT  Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:  Telephone Operting Company of Vermont LLC | Case Number:  09-16410-BRL |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):  seqTEL, Inc. | ❑ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:  Perkins Coie LLP  c/o Jeanette L. Thomas  1120 NW Couch, St., 10th Fl, Portland, OR 97209  Telephone number:  (503) 727-2000 | **Court Claim Number:**_____  (*If known*)  Filed on:_____ |
| Name and address where payment should be sent (if different from above):  **RECEIVED**  **MAR 1 8 2010**  Telephone number:  **BMC GROUP** | ❑ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.  ❑ Check this box if you are the debtor or trustee in this case. |

| **1. Amount of Claim as of Date Case Filed:**   $ __See attached__  If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.  If all or part of your claim is entitled to priority, complete item 5.  ☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**  Specify the priority of the claim.  ❑ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
|---|---|

| **2. Basis for Claim:**  __Services provided__  (See instruction #2 on reverse side.) | ❑ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
|---|---|
| **3. Last four digits of any number by which creditor identifies debtor:** _____  **3a.** Debtor may have scheduled account as: _____  (See instruction #3a on reverse side.) | |
| **4. Secured Claim (See instruction #4 on reverse side.)**  Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.  **Nature of property or right of setoff:** ❑ Real Estate  ❑ Motor Vehicle  ❑ Other  **Describe:**  **Value of Property:**$_____ **Annual Interest Rate**_____%  **Amount of arrearage and other charges as of time case filed included in secured claim, if any:** $_____ **Basis for perfection:** _____  **Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____ | ❑ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).  ❑ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).  ❑ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).  ❑ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(__). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:**  $_____ |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)  DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.  If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| **Date:**  03/17/2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  Jeanette L. Thomas, Attorney for Claimant | **FOR COURT USE ONLY**  FairPoint Comm. Inc.  ‖‖‖‖‖‖‖‖‖‖‖  06515 |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT A of segTEL, Inc. Claim
## In re Telephone Operating Company of Vermont LLC
### Chapter 11 Case No. 09-16410-BRL

## I.    Background

On October 26, 2009 (the "Petition Date"), FairPoint Communications and all of its direct and indirect subsidiaries (collectively, the "Debtors"), including Telephone Operating Company of Vermont LLC ("TOCV"), filed a voluntary petitions for relief with the United States Bankruptcy Court for the Southern District of New York.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Prior to the Petition Date, segTEL, Inc. ("segTEL"), a competitive local exchange carrier and public utility, purchased and provided services from and to Verizon New England, Inc., d/b/a Verizon Vermont ("Verizon").  In January, 2007 Verizon and certain of its affiliates sold a portion of their business (*i.e.* the landline operations in Maine, New Hampshire and Vermont) to FairPoint Communications, Inc. ("FairPoint").  segTEL operates in Maine, New Hampshire and Vermont and subsequently began purchasing services from TOCV and providing services to TOCV.

## II.    Amounts Owed to segTEL

segTEL has claims against TOCV under several legal grounds.  Each is summarized below.

### A.    Refunds due for Credit Balance

These are cases where segTEL has a positive credit balance due to resolved disputes or overpayments with TOCV on invoices, some of which are associated with closed accounts and TOCV has failed to refund the amount to segTEL.  The aggregate amount owed to segTEL for these refund amounts is $40,112.18.

### B.    Performance Assurance Plan Credits

In connection with the application of the predecessor of TOCV under 47 U.S.C. § 271, TOCV operates in the state of Vermont under a Performance Assurance Plan ("PAP") by order of the Vermont Public Service Board and by the Federal Communications Commission ("FCC").  The predecessor's development and execution of the PAP was approved and audited by the FCC, and by regulators in Pennsylvania, New York and Massachusetts, among others.  By orders of the Vermont Public Service Board and the FCC, TOCV was required to adopt the predecessor's PAP.   The PAP is intended to assure TOCV's performance of its obligations under 47 U.S.C. § 251 and 47 U.S.C. § 271, and requires payments and credits in the event of breaches or violations of certain obligations.  segTEL is entitled to credits under the PAP.

1.      Between acquisition (April 1, 2008) and February, 2009, TOCV failed to provide required PAP reports, and, as a result, failed to provide credits under the PAP despite repeated and severe breaches and violations of its obligations under 47 U.S.C. § 251 and 47 U.S.C. § 271.  The total amount of credits segTEL claims TOCV failed to calculate and credit is $14,196.00.

2.      In February 2009, TOCV began to provide unaudited PAP reports on a regular basis, each of which specified credits due to segTEL for TOCV's repeated and severe breaches and violations of its obligations under 47 U.S.C. § 251 and 47 U.S.C. § 271.  In some instances, TOCV failed to credit segTEL these amounts.  The total amount owed for this category is $5,895.00.

3.      The PAP developed and implemented by TOCV has not been submitted for review or audit to the Public Utility Commissions of Maine and New Hampshire nor the FCC. segTEL has requested such review and audit, and reserved its rights to a true-up of amounts owed under the PAP should such review and audit show that TOCV has misrepresented its performance.  segTEL's claim in this category is $5,895.00.

C.      Competitive Violation Claims

TOCV has breached and violated a number of obligations owed to segTEL under the terms of state and federal tariffs, interconnection agreements, pole attachment agreements, and federal statutes and regulations including 47 U.S.C. § 251, all of which have harmed segTEL as a competitive telecommunications provider.  Specifically, TOCV has failed to provide segTEL access to certain unbundled network elements on terms and conditions that are competitively neutral and non-discriminatory in violation of 47 U.S.C. § 251, its tariffs, Statement of Generally Available Terms and Conditions ("SGAT") and interconnection agreements ("ICA"), as applicable, in New Hampshire, Vermont, and Maine.  segTEL has been damaged in the amount of $63,000 by these breaches and violations.

D.      Total Owing

As a result, as of October 26, 2009, the total amount owed to segTEL is no less than $129,098.18.  Additionally, segTEL expects that it will incur additional legal expenses that are reimbursable under applicable law.

III.    **Inappropriate Amounts Claimed by TOCV**

The following amounts are amounts that TOCV claims are owed by segTEL.  segTEL believes that these amounts needs to be resolved in connection with the claim allowance process to prevent TOCV from asserting a right of setoff or from continuing inappropriate collection efforts, which would give rise to additional claims on behalf of segTEL.

A.      Amounts Barred by Statute of Limitations

TOCV has and continues to invoice segTEL for charges that have been previously been disputed by segTEL.  Under applicable federal and state statutes, TOCV must provide full and final resolution and assert its claims within the statutory bar period or the underlying invoiced

amount is destroyed and extinguished. Under the appropriate statute of limitations (including but not limited to Section 415(a) of the Communications Act, and the state law equivalents), TOCV is barred from seeking payment for such charges. Notwithstanding that fact, TOCV has continued to bill segTEL for such amounts. The total amount of such charges is $6,723.19.

Further, TOCV continues to invoice and collect on invoices more than two years old, invoices which segTEL records show as paid. These open balances, whether disputed or not, are barred from collection by the statute of limitations. The total amount of these open invoices is $5,415.21.

Notwithstanding all amounts barred by the relevant Statutes of Limitations, any and all amounts within this section are additionally disputed on the basis of the invoicing being (a) incorrect, (b) unsupportable, and/or (c) invalid under the applicable tariff, SGAT, ICA, or contract.

B.    Disputed Charges

For pre-petition periods not barred by the applicable Statute of Limitations (above) TOCV has and continues to invoice segTEL for charges that have been previously been disputed by segTEL. segTEL has disputed these charges on a variety of grounds, including, without limitation, the following: (a) the amounts are incorrect, (b) the amounts are unsupportable, (c) the amounts are invalid under applicable tariff, SGAT, ICA, or contract. The total amount of the disputed charges is $10,739.23.

C.    Payments Incorrectly Applied

segTEL has made payments to TOCV on account of services provided and pursuant to invoices received. Certain of these payments have been either not applied or inappropriately applied by TOCV to the incorrect invoice, including, in some cases, to accounts of other third parties. Despite repeated attempts to reconcile these errors, many such misapplied payments remain outstanding. The total amount of such unapplied payments is $48,701.77.

D.    Resolved But Uncredited Disputes

TOCV have and continue to invoice segTEL for charges that have been previously been disputed by segTEL and resolved by the parties. segTEL disputed these charges on a variety of grounds and the parties were able to reach agreement on the validity of such amounts but TOCV has failed to credit segTEL's accounts for these amounts. Accordingly segTEL is invoiced for these amounts each month and late fees and interest are accruing on these amounts. The total amount of such resolved amounts is $445.59.

E.    Total Inappropriate Charges

As a result, as of October 26, 2009, the total amount inappropriately invoiced to segTEL is no less than $72,024.99. Additionally, segTEL expects that it will incur additional legal expenses that are reimbursable under applicable law.

## IV. Reservation of Rights

segTEL specifically reserves the right to enforce and amend this claim if necessary to include all amounts due on account of provisions for the payment of additional charges, future interest, and all other costs to which it is entitled. segTEL also reserves all rights to amend this proof of claim to reflect any additional amounts that may become due and owing. Additionally, segTEL reserves all rights it has to assert as a defense, counterclaim, offset or recoupment, or otherwise, all amounts that have been listed on any and all bills received from TOCV prior to the Petition Date as credits in from TOCV to segTEL.

## V. Confidential and Proprietary Information

The Proof of Claim is based, in part, on documents containing commercially sensitive and proprietary information, including information relating to segTEL's customers. The underlying agreements and invoices are in the possession of the Debtors and will be made available upon request to other parties-in-interest who execute a confidentiality agreement in a form acceptable to segTEL and who demonstrate a legitimate need for such information in the sole discretion of segTEL or as otherwise determined by the Bankruptcy Court.

## VI. No Waiver/Release

The filing of this Proof of Claim shall not constitute: (a) a waiver or release of segTEL's rights (whether arising under an agreement or applicable law) against TOCV, any of the Debtors, or any other person, (b) a consent by segTEL to the jurisdiction of this Court with respect to the subject matter of the claims set forth in this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving segTEL, (c) a waiver or release of any right of segTEL, or consent by segTEL, to a trial by jury in the Bankruptcy Court or any other court in any proceeding, (d) a waiver or release of, or any other limitation on, any right of segTEL to have any orders entered only after de novo review by a United States District Judge, (e) an election of remedies, (f) a waiver of, or any other limitation on, any right of segTEL to request withdrawal of the reference with respect to any matter, including, without limitation, any matter relating to this proof of claim or (g) a waiver or release of, or any other limitation on, any right of segTEL to assert that any portion of its claim against is entitled to treatment as an administrative priority claim pursuant to Sections 503(b), 507(a)(1) or 507(b) of the Bankruptcy Code. segTEL expressly reserves the right to file one or more requests for payment of administrative expenses in connection with any portion of the claims asserted herein or otherwise arising under the applicable law.