Luc A. Despins, Esq.
James T. Grogan, Esq.
PAUL HASTINGS LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Counsel to Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x
                                              :
**In re:**                                    :    **Chapter 11**
                                              :
**FAIRPOINT COMMUNICATIONS, INC.,** *et al.,*: **Case No. 09-16335 (BRL)**
                                              :
        **Reorganized Debtors.**              :    **(Jointly Administered)**
                                              :
--------------------------------------------------------------x
                                              :
**FAIRPOINT COMMUNICATIONS, INC.,**           :
**NORTHERN NEW ENGLAND TELEPHONE**            :
**OPERATIONS LLC AND**                        :
**TELEPHONE OPERATING COMPANY OF**            :    **Adv. Proc. No. 11-01759 (BRL)**
**VERMONT LLC**                               :
                                              :
        **Plaintiffs,**                       :
                                              :
**v.**                                        :
                                              :
**SEGTEL, INC. AND**                          :
**SEGNET TECHNOLOGIES, INC.**                 :
                                              :
        **Defendants.**                       :
--------------------------------------------------------------x

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**AND COUNTERMOTION FOR DETERMINATION OF**
**CORE STATUS PURSUANT TO 28 U.S.C. 157(B)(3)**

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF MATERIAL FACTS ........................................................................................ 4

ARGUMENT ........................................................................................................................... 9

I. **Standard of Review** ....................................................................................... 9

II. **This Court Has Subject Matter Jurisdiction** ........................................... 10

    A. FairPoint's Counterclaims and Declaratory Judgment Claims Are Statutory "Core" Proceedings That, By Definition, Arise In or Arise Under Title 11 ............. 11

    B. This Court Has Constitutional Authority To Render A Final Judgment on FairPoint's Counterclaims and Declaratory Judgment Claims .................................. 14

    C. Defendants' Argument That This Court Lacks Jurisdiction Over "Post-Confirmation Claims" Is Meritless .............................................................................. 19

    D. Defendants' Remaining Jurisdictional Arguments Misstate and Misapply the Law .................................................................................................................................. 27

III. **Defendants' Ill-Conceived Invocation Of Primary Jurisdiction Should Be Denied** ........ 32

    A. Interpretation of the Issues Raised is Well Within the Conventional Expertise of This Court, and No Particular Agency Expertise is Necessary ................................ 35

    B. Counts 4, 5, 10, 13, 14 and 16 Involve the Routine Enforcement of Contract or Tariff Provisions ............................................................................................................ 35

    C. Count 17 Involves Tariff Provisions Routinely Interpreted By Courts ..................... 38

    D. This Court Should Resolve Threshold Legal Issues Raised In Count 8 Prior to Even Considering a Primary Jurisdiction Referral ...................................................... 38

    E. There is No Particular Question at Issue That is Within the Agency's Discretion .... 40

    F. With a Large Volume of Existing Precedent, There is No Danger of Inconsistent Rulings .................................................................................................... 41

    G. Application for Referral to Federal and State Agencies Was Made Long After Defendants Brought Their Claims Before This Court ................................................. 42

    H. Questions of Law Are Not Properly the Subject of Primary Jurisdiction Referral .... 43

    I. Primary Jurisdiction Referral in This Instance Will Result in Unnecessary Costs, Complications and Delay .................................................................................. 44

COUNTERMOTION FOR DETERMINATION OF CORE STATUS PURSUANT TO 28 U.S.C. 157(B)(3) ....... 45

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*All American Telephone Co., e-Pinnacle Communications, Inc., & ChaseCom,*
Memorandum Opinion and Order, 26 F.C.C. Rcd. 723 (2011) ................................................44

*American Telephone & Telegraph Co. v. Jiffy Lube International, Inc.,*
813 F. Supp. 1164 (D. Md. 1993) ..........................................................................................41

*Bankruptcy Services, Inc. v. Ernst & Young (In re CBI Holding Co.),*
529 F.3d 432 (2d Cir. 2008) .......................................................................................4, 19, 20, 21

*Binder & Binder, P.C. v Finnie (In re Finnie),*
No. 05-16373, 2007 WL 1574294 (Bankr. S.D.N.Y. May 29, 2007) ......................................9

*Brown v. MCI Worldcom Network Services, Inc.,*
277 F.3d 1166 (9th Cir. 2002) ........................................................................................33, 36

*Central Telephone Co. of Virginia v. Sprint Communications Co. of Virginia,*
759 F. Supp. 2d 772 (E.D. Va. 2011) ...................................................................................36

*Central Virginia Community College v. Katz,*
546 U.S. 356 (2006) ............................................................................................................15

*CFTC v. Schor,*
478 U.S. 833 (1986) ........................................................................................................16, 17

*Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.),*
270 B.R. 108 (2001) ............................................................................................................23

*City of Dearborn v. Comcast of Michigan III Inc.,*
Order, 25 F.C.C. Rcd. 2600 (2010) .....................................................................................44

*City of Olathe, Kansas v. KAR Development Associates (In re KAR Development
Associates),*
180 B.R. 629 (D. Kan. 1995) ...............................................................................................28

*Clark v. Time Warner Cable,*
523 F.3d 1110 (9th Cir. 2008) ..............................................................................................34

*Colorado River Water Conservation District v. United States,*
424 U.S. 800 (1976) ............................................................................................................19

*Core Communications v. Verizon Maryland, Inc.,*
18 F.C.C. Rcd. 7962 (2003) .................................................................................................40

*Eastern Air Lines, Inc. v. Brown & Williamson Tobacco Corp. (In re Ionosphere Clubs, Inc.)*,
    Case No. 89-B-10448 (BRL), 1999 Bankr. LEXIS 1875 (Bankr. S.D.N.Y.
    May 12, 1999) ................................................................................................................23, 24

*Eastern Air Lines Inc. v. Brown & Williamson Tobacco Corp. (In re Ionosphere Clubs
    Inc.)*,
    Case No. 89-B-10448 (BRL), 1999 WL 717291 (S.D.N.Y. Sept. 15, 1999) ...................23, 26

*Enhanced 911 Emergency Calling Systems*,
    Order, 23 F.C.C. Rcd. 11687 (2008) ...........................................................................................44

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Adv. P. No. 10-03496 (BRL), 2011 Bankr. LEXIS 2040 (Bankr. S.D.N.Y. May 23,
    2011) .....................................................................................................................................10, 14

*F.P. Corp. v. Golden West Foods, Inc.*,
    807 F. Supp. 1228 (W.D. Va. 1992) ............................................................................................43

*First Western SBLC, Inc. v. Mac-Tav, Inc.*,
    231 B.R. 878, 1999 WL 225551 (D.N.J. 1999) ...........................................................................22

*FTC v. Verity International, Ltd.*,
    443 F.3d 48 (2d Cir. 2006)...........................................................................................................42

*Geruschat v. Ernst Young LLP (In re Seven Fields)*,
    505 F.3d 237 .................................................................................................................................28

*Global Crossing Bandwith, Inc. v. OLS, Inc.*,
    2009 U.S. Dist. LEXIS 22402 (W.D.N.Y. 2009) .......................................................................42

*Great Southern Savings Bank v. Central Transport Inc. (In re Campbell Sixty Six
    Express, Inc.)*,
    147 B.R., 202 ...............................................................................................................................22

*Hunnicutt Co. v. TJX Cos. (In re Ames Department Stores, Inc.)*,
    190 B.R. 157 (S.D.N.Y 1995)......................................................................................................22

*Improving Public Safety Communications in the 800 MHz Band*,
    Fifth Report and Order, 25 F.C.C. Rcd. 13874 (2010) ...........................................................44

*In re Baker*,
    118 B.R. 24 (Bankr. S.D.N.Y. 1990)...........................................................................................23

*In re Hemphill Bus Sales, Inc.*,
    259 B.R. 865, 870 (Bankr. E.D. Tex. 2001) ...............................................................................23

*J.S. v. Attica Central Schools*,
386 F.3d 107 (2d Cir. 2004)...................................................................9, 10

*Kamen v. American Telephone and Telegraph Co.*,
791 F.2d 1006 (2d Cir. 1986)......................................................................10

*Katchen v. Landy*,
382 U.S. 323 (1966).....................................................................................17

*Kirschner v. Grant Thornton LLP (In re Refco)*,
628 F. Supp. 2d 432 (S.D.N.Y. 2008)...................................................27, 28

*Krys v. Sugrue*,
2008 WL 4700920 (S.D.N.Y. Oct. 23, 2008) ............................................26

*Lacy v. FDIC (In re Lacy)*,
183 B.R. 890 (Bankr. D. Colo. 1995) ........................................................27

*Linda Thorpe v. GTE Corp.*,
Memorandum Opinion and Order, 23 F.C.C. Rcd. 6371 (2008) ...............44

*Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
304 F.3d 223 (2d Cir. 2002)..........................................................19, 22, 29

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)..........................................................................9

*Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterware Corp.)*,
241 B.R. 511 (Bankr. S.D.N.Y. 1999) .......................................................10

*MetroPCS Wireless, Inc. v. Community Voice Line*,
No. 11-CV-00501-JFM, Memo to Counsel (D. Md. Jul. 6, 2011) ............43

*Moelis & Co. LLC v. Wilmington Trust FSB (In re General Growth Properties, Inc.)*,
Adv. Pro. No. 10-04273, 2011 Bankr. LEXIS 600, 2011 WL 766129 (Bankr.
S.D.N.Y. Feb. 25, 2011) ..............................................................................14

*National Communications Ass'n v. AT&T Co.*,
46 F.3d 220 (2d Cir. 1995).......................................................3, 35, 38, 40

*Neilson v. Straight-Out Promotions, LLC (In re Michael Tyson)*,
Adv. Proc. No. 05-02210, 2007 WL 2379624 (Bankr. S.D.N.Y. Aug. 17, 2007)...................26

*Norman Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*,
300 B.R. 564 (S.D.N.Y. 2003)....................................................................26

*North American Car Corp. v. Peerless Weighing & Vending Machine Corp.*,
143 F.2d. 938 (2d. Cir. 1944) ................................................................................. 27

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*
458 U.S. 50 (1982) ......................................................................................... 15, 18, 21

*Nwabueze v. AT&T Inc.*,
2011 U.S. Dist. LEXIS 8506 (N.D. Cal. 2011) ...................................................... 41

*Pac-West Telecomm, Inc. v. MCI Communications Services*,
2011 U.S. Dist. LEXIS 30044 (E.D. Cal. 2011) .................................................... 36

*PacifiCorp v. Northwest Pipeline GP,*
2010 U.S. Dist. LEXIS 83040 (D. Or. 2010) ........................................................ 36

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984) .................................................................................. 27

*Pereira v. Centel Corp. (In re Argo Communications Corp.)*,
134 B.R. 776 (Bankr. S.D.N.Y. 1991) .................................................................. 28

*Rahl v. Bande*,
316 B.R. 127 (S.D.N.Y. 2004) ........................................................................ 28, 31

*Saint Vincent's Catholic Medical Centers of New York*,
440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010) ............................................................ 5

*Schiller v. Tower Semiconductor Ltd.*,
449 F.3d 286 (2d Cir. 2006) ...................................................................... 34, 40, 43

*Shandler v. DLJ Merchant Banking, Inc. (In re Insilco Technologies, Inc.),*
330 B.R. 512 (Bankr. D. Del. 2005) ..................................................................... 31

*Silverman v. General Railway Signal Co. (In re Leco Enterprises, Inc.)*,
144 B.R. 244, 248 (S.D.N.Y. 1992) ...................................................................... 14

*Southern Utah Wilderness Alliance v. Bureau of Land Management*,
425 F.3d 735 (10th Cir. 2005) ............................................................................... 33

*Splitrock Properties. v. Qwest Communications Corp.*,
2010 U.S. Dist. LEXIS 73057 (D.S.D. 2010) ....................................................... 36

*Sprint Nextel Corp. v. DBSD North America, Inc. (In re DBSD North America, Inc.)*,
427 B.R. 245 (S.D.N.Y. 2010) ............................................................................. 44

v

*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*,
2010 U.S. Dist. LEXIS 137860 (W.D.N.Y. 2010) ................................................................41

*Stern v. Marshall*,
131 S. Ct. 2594 (2011) .................................................................................................. passim

*Thickstun Bros. Equipment v. Encompass Services Corp. (In re Thickstun Bros. Equipment)*,
344 B.R. 515 (6th Cir. BAP 2006)..............................................................................30

*Trinko v. Bell Atlantic Corp.*,
305 F.3d 89 (2d Cir. 2002)..............................................................................................40

*U.S. ex rel. Taylor v. Gabelli*,
345 F. Supp.2d 340 (S.D.N.Y. 2004).........................................................................39

*United States v. Western Pacific Railroad Co.*,
352 U.S. 59 (1956)............................................................................................................34

*United Telephone Co. of Kansas*,
Order, 25 F.C.C. Rcd. 1648 (2010)..............................................................................44

*Wholesale Telecom Corp. v. ITC Deltacom Communications, Inc.*,
176 Fed. Appx. 76 (11th Cir. 2006)..........................................................................41

*Winston & Strawn v. Kelly (In re Churchfield Management & Investment Corp.)*,
122 B.R. 76 (Bankr. N.D. Ill. 1990) ..........................................................................31

*Zerand-Bernal Group, Inc. v. Cox (In re Cary Metal Products Inc.)*,
152 B.R. 927 (Bankr. N.D. Ill 1993) ..........................................................................27

STATUTES

11 U.S.C. § 101(5) ............................................................................................................30

11 U.S.C. § 365.............................................................................................................13, 16

11 U.S.C. § 502.......................................................................................................6, 13, 16

11 U.S.C. § 547(c)(9)........................................................................................................31

11 U.S.C. § 1141(b) ...........................................................................................................5

28 U.S.C. § 157.............................................................11, 12, 14, 20, 21, 23, 24, 46

28 U.S.C. § 1334(b) .........................................................................................10, 14, 24

**TABLE OF AUTHORITIES**
**(continued)**

Pages

RULES

Fed. R. Bankr. P. 3007(b) ..................................................................................................12

Fed. R. Bankr. P. 7012(b) ....................................................................................................9

OTHER AUTHORITIES

David R. Hurst *et al.*, *The Scope of Post-Confirmation Bankruptcy Court Jurisdiction,*
    American Bankruptcy Institute 4th Annual Mid-Atlantic Bankruptcy Workshop, July
    31, 2008, *available at* 073108 ABI-CLE 595 (Westlaw) .......................................................28

# Preliminary Statement

In deciding the Defendants' motion to dismiss, the Court is presented with two straightforward issues:

**1.     Subject Matter Jurisdiction.**  The Supreme Court and the Court of Appeals for the Second Circuit have held that, after a party files a proof of claim in a bankruptcy case, the bankruptcy court has "core" subject matter jurisdiction over an objection to the proof of claim and any counterclaim that is necessary to the resolution of the proof of claim.  Here, each of the counts that Defendants want dismissed is a counterclaim that, in Defendants' own words, is "inextricably intertwined" with the allowance of Defendants' proofs of claim.  Defendants have asserted claims on the basis of inaccurate FairPoint bills, overpayments and credits due on their accounts with FairPoint, and FairPoint has asserted counterclaims based on the balance due on those same accounts.  Should the Court dismiss FairPoint's counterclaims for lack of subject matter jurisdiction?

**2.     Primary Jurisdiction.**  Primary jurisdiction is a discretionary, "prudential" doctrine under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry, rather than by the judicial branch.  Indeed, the Second Circuit has specifically held that primary jurisdiction does not apply to cases involving the enforcement of a tariff, and questions of law are similarly inappropriate for primary jurisdiction referral.  Here, FairPoint has objected to Defendants' proofs of claim because, among other things, (a) the proofs of claim fail to allege any facts that would plausibly support an otherwise cognizable claim, (b) Defendants seek damages that are barred by FairPoint's plan of reorganization, (c) Defendants do not assert "claims" as that term is defined in the Bankruptcy Code, (d) Defendants seek damages that are barred and waived as a matter of law by the terms of

governing agreements and the filed-tariff doctrine, and (e) well-established case law holds that the statutes relied upon by Defendants do not support private causes of action. Does the Court require answers to *any* technical or policy questions to rule on these issues?

Stripped of its rhetoric, the motion to dismiss is a transparent attempt to avoid scrutiny by this Court of the claims at issue so that Defendants can engage in unabashed forum-shopping. The motion is not a good faith attempt to resolve legal issues in the appropriate forum for those claims. Rather, it is an attempt by the Defendants to obtain multiple opportunities to assert the same claims in at least **five** different tribunals, after this Court warned counsel to Defendants about the license that was taken when they filed claims for more than $5 million without any factual or evidentiary support:

> I am and I have been, for thirty-plus years, disturbed over the license that's taken with respect to the filing of claims. And there is a legend . . . at the bottom of every proof of claim which refers to Title 18 (152) (4) which should be cautionary and get people to be very precise with the filing of a claim; just what the claim is all about . . . . And the point I'm trying to make is, we shouldn't have to go through all of this process to find out … what you're really asking for in a proof of claim. And I'm constrained upon what I looked in physically at the size of the claim that you filed, without any real roadmap, as I understand it. I look at that, and I'm constrained as a matter of policy, to allow the 2004 to go forward and just see if we can get to the heart of what you're really asking for."[1]

Defendants also apply the wrong legal standards to the issues presented in this case – and, along the way, they get those standards wrong. The issues in this adversary proceeding antedate the effective date of FairPoint's chapter 11 plan and have been addressed by the Court at various times throughout the administration of these chapter 11 cases. What's more, although Defendants did not have the benefit of the Supreme Court's decision in *Stern v. Marshall* when

---

[1]     *See* Transcript of Proceedings ("October Transcript"), dated October 20, 2010, at 78:5-78:23. [Main Case D. No. 1851, attached as Exhibit 1.] Exhibits to this opposition brief are located in the attached Appendix.

the motion was filed, Defendants should not have ignored the decision by this Court and the Second Circuit in *CBI Holdings* that counterclaims brought after confirmation of a plan are subject to this Court's core jurisdiction when those counterclaims, as Defendants have already admitted, are interconnected with the proofs of claim filed against the estate. Although Defendants chose to argue about this Court's "related-to" jurisdiction over non-core matters, that standard applies – and the cases cited by Defendants illustrate the point – for example, when non-debtors sue non-debtors in bankruptcy court and when the estate brings causes of action that have no relation to proofs of claim against the estate. The case law on which Defendants rely is not *related to* the facts or legal issues presented here.

Furthermore, this adversary proceeding satisfies *none* of the four factors the Second Circuit has established for the evaluation of primary jurisdiction: (i) whether the *question at issue* is within the conventional experience of judges or instead involves technical or policy considerations within the agency's peculiar expertise; (ii) whether the *question at issue* is particularly within the agency's discretion; (iii) whether there is a substantial risk of inconsistent rulings by the court and the agency on *the same issue*; and (iv) whether a prior application on *the same issue* was made to the agency.[2] Before Defendants concocted their scheme to delay the efficient resolution of this adversary proceeding by trying it *five times in five different tribunals*,[3] counsel to Defendants represented to this Court that the various claims at issue here were a straightforward **"matter of legal analysis of looking at the bills, looking at the law and understanding them."**[4] Counsel was right the first time when Defendants were opposing FairPoint's right to factual discovery: no one needs state and federal regulatory expertise to

---

[2]     *See National Commc'ns Ass'n v. AT&T Co.*, 46 F. 3d 220, 222-25 (2d Cir. 1995) ("<u>NCA</u>").

[3]     Defendants' motion suggests that this action should be heard by the Federal Communications Commission, the New Hampshire PUC, the Vermont PUC, the Maine PUC, and this Court. *See* Motion at 21-30.

[4]     *See* October Transcript, at 79:21-79:22.

3

resolve simple facts and disputes over issues of law. There are numerous threshold questions of law at issue here, which makes these claims inappropriate for agency review under Second Circuit precedent.

Finally, Defendants should have raised this issue long ago. The Court has held two hearings regarding the claims at issue and already entered two prior orders. The delay and expense that would result from conducting this adversary proceeding in *five different tribunals* – following an untimely, 11th hour request by Defendants – compels denial of that request.

## STATEMENT OF MATERIAL FACTS

**General Background:**

On October 26, 2009 (the "Petition Date"), FairPoint commenced bankruptcy cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. The Defendants are competitors of FairPoint that purchase telecommunications services and facilities from FairPoint for resale and interconnection under various agreements and state and federal tariffs (the "Agreements").

On March 18, 2010, Defendants filed proofs of claim nos. 6512, 6513, 6514 and 6515 (the "Proofs of Claim") asserting more than $5 million in claims against FairPoint's estates. By filing the Proofs of Claim, Defendants submitted themselves to this Court's equitable jurisdiction.[5] The Proofs of Claim filed by Defendants accuse FairPoint of, among other things, over-billing for the services and facilities that Defendants purchase, and failing to adequately account for refunds and credits due to Defendants.

On December 29, 2010, FairPoint filed its Third Amended Joint Plan of Reorganization

---

[5] *See, e.g.*, *Bankruptcy Servs., Inc. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 466 (2d Cir. 2008) (filing a proof of claim submits a creditor to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim).

Under Chapter 11 of the Bankruptcy Code (the "Plan").[6]  This Court entered an order confirming

the Plan (the "Confirmation Order") on January 13, 2011.[7]  The Plan became effective according

to its terms on January 24, 2011 (the "Effective Date").  The Plan provides that causes of action

belonging to FairPoint's bankruptcy estates continue post-confirmation and the estates simply

substituted reorganized FairPoint for the debtors as the authorized representatives of the

bankruptcy estates[8]

**The Court Authorized Assumption of the Agreements and Fixed Cure At $0.00:**

On March 11, 2010, this Court entered an order that, among other things, approved

FairPoint's disclosure statement for its chapter 11 plan, established a hearing regarding

confirmation of the plan, and provided for related notice and objection procedures

(the "Disclosure Statement Order").[9]  The Disclosure Statement Order established April 28, 2010

as the deadline for filing objections to FairPoint's chapter 11 plan.  On March 25, 2010,

FairPoint filed its Approved Second Amended Disclosure Statement For Debtors' Second

Amended Joint Plan (the "Disclosure Statement")[10] and began the process of soliciting creditor

---

[6]      Main Case Docket No 2115, attached as Exhibit 2. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[7]      Main Case Docket 2113, attached as Exhibit 3.

[8]      Under the Bankruptcy Code, "[e]xcept as otherwise provided in the plan," confirmation of the plan "vests all property of the estate in the debtor," and the estate may be deemed to terminate.  11 U.S.C. § 1141(b). Here, FairPoint's Plan provides "otherwise."  *See* Plan, at § 8.12 (providing that "in accordance with section 1123(b) of the Bankruptcy Code, Reorganized FairPoint, as successors-in-interest to FairPoint and its Estates, shall retain and may enforce FairPoint's Causes of Action that are property of FairPoint and its Estates (including Avoidance Actions) . . . and Reorganized FairPoint shall retain and enforce all defenses and counterclaims to all Claims asserted against FairPoint and its Estates, including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.  Reorganized FairPoint may pursue such Causes of Action (other than the Litigation Trust Claims), counterclaims and defenses, as appropriate, in accordance with its best interests, as determined by Reorganized FairPoint.").

[9]      Main Case Docket No. 825.  This Court can take judicial notice of the pleadings, transcripts, orders and other docket entries entered in FairPoint's chapter 11 cases.  *See Saint Vincent's Catholic Med. Ctrs. of N.Y.*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010) (taking judicial notice of the docket in the underlying bankruptcy case in adjudicating a motion to dismiss).

[10]      Main Case Docket No. 915, attached as Exhibit 4.

acceptances.

The Disclosure Statement explained that, subject to certain exceptions not applicable here, all executory contracts that provide for the purchase of access to FairPoint's facilities or services by a third party would be assumed on the Effective Date by FairPoint and that ***"[n]o Cure shall be paid and no other form of refund or billing credit shall be given in connection with the assumption of such an agreement."***[11] Section 11.3.3(iii) of the Plan and ¶ 45 of the Confirmation Order contain the same language that is quoted from the Disclosure Statement in the preceding sentence.[12]

Although Defendants filed an objection to FairPoint's proposed assumption of contracts (the "Cure Objection"),[13] that objection did not address the provisions of section 11.3.3(iii) of the Plan. Furthermore, the Cure Objection did not raise the doctrine of primary jurisdiction.

**The Court Estimated Defendants' Claims:**

On June 15, 2007, FairPoint filed a motion (the "Estimation Motion")[14] to estimate the Proofs of Claim because (i) rather than asserting a "claim" or "right to payment" against FairPoint, the Proofs of Claim primarily consist of billing disputes over services purchased from FairPoint, (ii) Defendants failed to pay amounts due to FairPoint and thus any claims filed by Defendants were disallowed under section 502(d) of the Bankruptcy Code, and (iii) Defendants' claims were for consequential damages that have been waived under the terms of the

---

[11]    Disclosure Statement, at 81 (emphasis added). FairPoint's Second Amended Joint Plan of Reorganization, attached as Exhibit A to the Disclosure Statement, contained an identical provision at p. 45.

[12]    *See* Plan, § 11.3.3(iii); Confirmation Order, at ¶ 45. Section 1.32 of the Plan states that "'Cure' means the Distribution of Cash, or such other property as may be agreed upon by the parties and/or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all accrued, due and unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties or ordered by the Bankruptcy Court, under such executory contract or unexpired lease." Plan, § 1.32.

[13]    Main Case Docket No. 1239, attached as Exhibit 5.

[14]    Main Case Docket No. 1477, attached as Exhibit 6.

Agreements.[15]  Defendants objected to the Estimation Motion but they did not raise the doctrine of primary jurisdiction.

On July 21, 2010, this Court entered an order (the "Estimation Order")[16] estimating the Proofs of Claim for purposes of calculating the reserves established under section 9.22 of Plan and retaining its jurisdiction over that matter.  To that end, a Plan reserve for Defendants' claims was established in the amount of $3,709,572.66 (the "Segtel Reserve Amount").

**The Court Authorized FairPoint to Take Bankruptcy Rule 2004 Discovery:**

On October 12, 2010, FairPoint moved for a Bankruptcy Rule 2004 examination of the Defendants.[17]  At that time, FairPoint informed this Court that it disputed Defendants' claims, and that it "also has substantial claims against the [Defendants] which may reduce or offset entirely the allowed amount of the Proofs of Claim, if any."[18]  FairPoint further indicated that its "examination [would] focus on the bases for the allegations in the Proofs of Claim, any defenses or ***affirmative counter-claims*** FairPoint may have, and how the [Defendants] calculated the more than $5 million they seek to recover from the estates."[19]

Defendants filed an objection to the Bankruptcy Rule 2004 motion and alleged, among other things, that the examination was inappropriate because the Cure Objection was still a pending contested matter before the Court.[20]  Defendants did not, however, raise the doctrine of primary jurisdiction with respect to the Bankruptcy Rule 2004 examination.  Instead, counsel to Defendants assured the Court that this was simply "***a matter of legal analysis*** of looking at the

---

[15]    Estimation Motion, at ¶ 15-24.

[16]    Main Case Docket No. 1679, attached as Exhibit 7.

[17]    Main Case Docket No. 1789, attached as Exhibit 8.

[18]    *Id.* at ¶ 5.

[19]    *Id.* at ¶ 9 (emphasis added).

[20]    Main Case Docket No. 1803, attached as Exhibit 9, at ¶ 15-24.

bills, looking at the law and understanding them."[21]

At the hearing on FairPoint's Bankruptcy Rule 2004 motion, this Court warned counsel to Defendants about the license that was taken when Defendants filed claims for more than $5 million without any factual or evidentiary support.[22] Accordingly, this Court overruled Defendants' objection and authorized the discovery requested by FairPoint.

In addition, on December 1, 2010, Defendants also moved for a Bankruptcy Rule 2004 examination of FairPoint.[23] Defendants filed their motion to seek "information from FairPoint to assist it in proving the underlying merits of the Claims asserted against [FairPoint],"[24] and "***any claims that FairPoint may assert against either [Defendant]***."[25] Defendants did not raise the doctrine of primary jurisdiction in its own motion for examination. Defendants later withdrew this motion after the filing of this adversary proceeding.

**FairPoint filed this Adversary Proceeding Against Defendants:**

On April 15, 2011, FairPoint commenced this adversary proceeding by filing a complaint against the Defendants. The complaint consists of (i) objections to the Proofs of Claim, (ii) FairPoint's counterclaims against Defendants to recover amounts due for services and facilities provided to Defendants, and (iii) requests for certain declaratory relief by FairPoint related to the amount of cure, if any, that must be paid for the assumption of the Agreements pursuant to the Plan and the Confirmation Order.

On June 16, 2011, Defendants filed their motion to dismiss FairPoint's complaint. In support of Defendants' motion to dismiss, Defendants assert that this Court lacks subject matter

---

[21]     *See* October Transcript, at 79:21-79:22.

[22]     *See* October Transcript, at 78:5-78:23.

[23]     Main Case Docket No. 1940, attached as Exhibit 10.

[24]     *Id. at* ¶ 14.

[25]     *Id. at* ¶ 9.

jurisdiction over FairPoint's counterclaims in the complaint. The Defendants' motion also seeks to refer FairPoint's objections to the Proofs of Claim to the Federal Communications Commission or state Public Utilities Commissions on the basis that the doctrine of primary jurisdiction applies.[26] As a result, Defendants suggest that this adversary proceeding should be tried in a piecemeal manner by five different state and federal tribunals.

This brief is filed in opposition to the Defendant's motion to dismiss.

## ARGUMENT

### I. *Standard of Review*

Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7012(b), governs motions to dismiss for lack of subject matter jurisdiction.[27] A case should be dismissed for lack of subject matter jurisdiction only if the district court "lacks the statutory or constitutional power to adjudicate it."[28] In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court must view the complaint liberally and accept as true all material facts alleged in the complaint.[29] Unlike a Rule 12(b)(6) motion to dismiss, the court need not draw inferences favorable to the plaintiff from the complaint.[30] But the Court is allowed to consider extrinsic evidence and is not limited to the information contained in the

---

[26] In their motion to dismiss, Defendants attach a letter, dated June 9, 2011, describing Defendants' claims against Plaintiffs arising out of alleged pre- and post-petition conduct. To the extent that this letter amends the Proofs of Claim, Defendants are barred from doing so under section 10.9 of the Plan.

[27] *See* Fed. R. Bankr. P. 7012(b).

[28] *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[29] *Binder & Binder, P.C. v Finnie (In re Finnie)*, No. 05-16373, 2007 WL 1574294, at *3 (Bankr. S.D.N.Y. May 29, 2007) (citing *19 Court Street Assocs., LLC v. Resolution Trust Corp. (In re 19 Court Street Assocs., LLC)*, 190 B.R. 983, 995 (Bankr. S.D.N.Y. 1996); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l., Ltd.*, 775 F. Supp. 101, 103 (S.D.N.Y. 1991)).

[30] *J.S. v. Attica Cent. Schools*, 386 F.3d 107, 110 (2d Cir. 2004).

pleadings, so long as it does not rely on conclusory or hearsay evidence.[31]  As demonstrated below, this Court has subject matter jurisdiction over all counts of FairPoint's complaint.

## II.    *This Court Has Subject Matter Jurisdiction*

In section 1334 of title 28 of the United States Code, Congress gave district courts original jurisdiction over "all civil proceedings arising under" the Bankruptcy Code, "or arising in or related to cases under" the Bankruptcy Code.[32]  District courts may refer any of those proceedings to a bankruptcy court.[33]  In this district, the reference authorized by section 157(a) was effectuated by an order, dated July 10, 1984, issued by Acting Chief District Court Judge Robert J. Ward.[34]

Bankruptcy courts have statutory authority to enter final judgments only in "core" bankruptcy proceedings, which either "aris[e] under" the Bankruptcy Code, or "aris[e] in a case under" the Bankruptcy Code.[35]  By contrast, a proceeding is "non-core" if it is only "related to" a bankruptcy case.[36]  In a non-core, related-to proceeding, bankruptcy courts have subject matter jurisdiction under section 1334 of title 28, but they can only enter proposed findings of fact and conclusions of law subject to *de novo* review by the district court, unless the parties consent to entry of a final judgment by the bankruptcy court.[37]

Based on these principles, in order to prevail on a motion to dismiss for lack of subject

---

[31]    *Kamen v. Am. Tel. and Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen . . . subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise."); *Attica Cent. Schools*, 386 F.3d at 110.

[32]    28 U.S.C. § 1334(b).

[33]    28 U.S.C. § 157(a); *see also Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. P. No. 10-03496 (BRL), 2011 Bankr. LEXIS 2040, *18-*20 (Bankr. S.D.N.Y. May 23, 2011) (discussing the relationship of sections 157 and 1334 of title 28).

[34]    *See Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterware Corp.)*, 241 B.R. 511, 517 n. 6 (Bankr. S.D.N.Y. 1999).

[35]    28 U.S.C. § 157(b)(1).

[36]    28 U.S.C. § 157(c).

matter jurisdiction, Defendants must show that a cause of action is both non-core and non-related. For it is only in that situation that both the bankruptcy court and the district court lack subject matter jurisdiction over the proceeding. As described more fully below, that situation does not exist here.

A.     **FairPoint's Counterclaims and Declaratory Judgment Claims Are Statutory "Core" Proceedings That, By Definition, Arise In or Arise Under Title 11**

One month ago, the Supreme Court held in *Stern v. Marshall* that bankruptcy courts have subject matter jurisdiction over counterclaims against persons filing claims against the estate because Congress has designated those proceedings as "core" proceedings that, by definition, arise under title 11 or arise in a case under title 11.[38] The Court determined that section 157(b)(1) was capable of two interpretations: (i) it could "be read as referring to a limited category of those core proceedings that are addressed in that section" – *i.e.* core proceedings that *also* arise under or arise in title 11 even though there are *some* core proceedings that do not arise under or in title 11; or (ii) "the phrases might be read as simply describing what core proceedings are – matters arising under Title 11 or in a Title 11 case."[39] The Court adopted the second interpretation.

In reaching this conclusion, the Court noted that if it interpreted section 157(b)(1) to mean that some counterclaims against persons filing claims against the estate are not core, it would have to assume that "there is a category of core proceedings that neither arise under Title 11 nor arise in a Title 11 case."[40] The Court rejected this reading, however, because the "manner in which the statute delineates the bankruptcy courts' authority . . . makes plain that no such

---

[37]     28 U.S.C. § 157(c)(1), (2).

[38]     *Stern v. Marshall*, 131 S. Ct. 2594, 2603-05 (2011).

[39]     *Id.* at 2604.

[40]     *Id.*

category exists."[41]  Instead, Congress has created two distinct proceedings over which the bankruptcy court has jurisdiction: (a) core proceedings that arise under or arise in title 11; and (b) non-core proceedings that "relate to" a case under title 11.  Hence, the Court concluded that "core proceedings are those that arise in a bankruptcy case or under Title 11.  The detailed list of core proceedings in § 157(b)(2) provides courts with ready examples of such matters. . . .  [I]t does not make sense to describe a 'core' bankruptcy proceeding as merely 'related to' the bankruptcy case; oxymoron is not a typical feature of congressional drafting."[42]

Here, the counts that Defendants ask this Court to dismiss for lack of jurisdiction are plainly core proceedings as defined by Congress.  Indeed, the opening paragraph of FairPoint's complaint expressly states that FairPoint is objecting to Defendants' proofs of claim and asserting "counterclaims against Defendants for monetary damages and other affirmative relief as stated herein."  Further, FairPoint brought this action under Bankruptcy Rule 3007(b), which provides that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."[43]

Nevertheless, Defendants seek to dismiss the following counts of FairPoint's complaint:

- Count 11:  This Count is FairPoint's counterclaim against Defendants for breach of contract and breach of obligations under FairPoint's tariffs.

- Count 12:  This Count is FairPoint's counterclaim against Defendants for unjust enrichment.

- Count 13:  This Count is FairPoint's' counterclaim against Defendants for an equitable accounting because Defendants have failed to state with particularity or provide any support for their proofs of claim.

---

[41]     *Id.*

[42]     *Id.* at 2605.

[43]     Fed. R. Bankr. P. 3007(b).

- Count 14:  This Count is FairPoint's counterclaim against Defendants for turnover because Defendants have failed to pay liquidated and matured amounts owed for services and facilities provided by FairPoint under the Agreements.

- Count 15:  This is FairPoint's objection to the Proofs of Claim based on section 502(d) of the Bankruptcy Code.

- Count 16: This Count is FairPoint's request for declaratory judgment that no cure is owed to Defendants to assume the Agreements under section 365 of the Bankruptcy Code and section 11.3.3(iii) of the Plan.

- Count 17:  This Count is FairPoint's counterclaim against Defendants for declaratory judgment regarding FairPoint's entitlement to adequate assurance of payment from Defendants due to a proven history of late payments.

Counts 11-14 and 17 fall within the ambit of section 157(b)(2)(C) as counterclaims by the estate against persons (the Defendants) filing claims against the estate, and section 157(b)(2)(O) as other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship.  Count 14 is also a core proceeding for an order to turn over property of the estate under section 157(b)(2)(E).  Counts 13, 15 and 16 are core proceedings regarding the allowance or disallowance of Defendants' claims against the estate for purposes of section 157(b)(2)(B) and 157(b)(2)(O).  And Count 16 concerns the administration of the estate, the allowance or disallowance of claims against the estate, the dischargeability of particular debts, confirmation of the Plan, approval of the use of the Agreements, and other matters affecting the adjustment of the debtor-creditor relationship in accordance with sections 157(b)(2)(A), (B), (I), (L), (M) and (O).

At bottom, Defendants' motion to dismiss these counts of the complaint must be denied because it invites this Court to create a category of core proceedings that neither Congress nor the Supreme Court have recognized: core proceedings that do not arise in or under title 11.  The question of whether the Court has subject matter jurisdiction over the counterclaims and request for declaratory judgment set forth in the complaint has been conclusively determined by the Supreme Court.  It does.

The Supreme Court ultimately ruled, however, that despite the "core" nature of the counterclaim at issue in *Marshall*, "serious constitutional concerns" related to Article III prevented the bankruptcy judge in that case from entering a final judgment on that counterclaim.[44]  The Supreme Court viewed the practical consequences of these concerns to be minor because even if the bankruptcy court were unable to enter a final judgment, the bankruptcy court could still enter proposed findings of fact and conclusions of law for entry by the district court.[45]  Moreover, the bankruptcy court would be able to enter a final judgment with the consent of the parties as it can in a non-core matter that is "related to" the chapter 11 case.  In any event, as FairPoint will show momentarily, the constitutional limitations recognized by the *Marshall* Court are of no consequence here because the counterclaims asserted by FairPoint fall well within the limits of this Court's core jurisdiction as established in *Marshall* and earlier Supreme Court precedent.

**B.     This Court Has Constitutional Authority To Render A Final Judgment on FairPoint's Counterclaims and Declaratory Judgment Claims**

Having held that the counterclaim at issue in *Marshall* was a core proceeding under the statutory language and, therefore, arose in or under title 11 for purposes of 28 U.S.C. § 1334(b),[46] the Supreme Court proceeded to inquire about whether, under 28 U.S.C. § 157(b)(2)(C), the bankruptcy court in *Marshall* had constitutional authority under Article III to issue a final judgment on the debtor's counterclaim.  The Supreme Court held that the bankruptcy court did not have that constitutional authority because the counterclaim did not

---

[44]     *Marshall*, 131 S. Ct. 2594, 2620.

[45]     *Id.*

[46]     *Cf. Silverman v. Gen. Ry. Signal Co. (In re Leco Enters., Inc.)*, 144 B.R. 244, 248 (S.D.N.Y. 1992) (holding that core proceedings listed in 28 U.S.C. § 157(b)(2) are also claims defined as "arising in" and "arising under" proceedings in 28 U.S.C. § 1334); *In re Fairfield Sentry Ltd.*, 2011 Bankr. LEXIS 2040, *19-*20 (noting that matters that "arise under" title 11 or "arise in" cases under title 11 are within the bankruptcy court's "core" jurisdiction; *Moelis & Co. LLC v. Wilmington Trust FSB (In re General Growth Properties,*

implicate "public rights" under the Court's jurisprudence.[47]  If "public rights" are implicated by the counterclaim, as where the counterclaim at issue is intertwined with the resolution of a proof of claim in the bankruptcy case, the bankruptcy court has the constitutional authority to issue a final judgment.  But the exercise of judicial power on "private rights" is reserved for an independent judiciary that enjoys the protections to salary and tenure specified by Article III of the Constitution.  Therefore, the Supreme Court held that "[t]he Bankruptcy Court lacked constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[48]

In reaching this conclusion, the Court relied on its prior jurisprudence in cases that recognize the constitutional significance of the distinction between "public rights" matters – matters "arising between the Government and persons subject to its authority" that historically could have been determined by Congress or the executive branch – and "private rights" matters, such as disputes arising under common law.[49]  Article I tribunals like bankruptcy courts have been created by Congress to adjudicate matters involving "public rights."[50]  The Bankruptcy Code provides a framework for processing claims against the bankruptcy estate that is consistent with the fundamentally *in rem* nature of bankruptcy jurisdiction.[51]

Proceedings that provide for the allowance and disallowance of claims against the bankruptcy *res* can fairly be described as "public rights" matters over which a bankruptcy court

---

Inc.), Adv. Pro. No. 10-04273, 2011 Bankr. LEXIS 600, 2011 WL 766129, at *3 (Bankr. S.D.N.Y. Feb. 25, 2011) ("Core matters include those that 'arise under' or 'arise in' bankruptcy cases.").

[47]   *Marshall*, 131 S. Ct. 2594 at 2611.

[48]   *Id.* at 2620.

[49]   *See, e.g.*, *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 67-70 (1982).

[50]   *See id.* at 67; *see also Marshall*, 131 S. Ct. 2594 at 2619-20 (discussing framework for resolution of claims against the estate).

[51]   *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 362 (2006).

may exercise core jurisdiction.[52]  Moreover, matters of private right that are necessarily

intertwined with matters of public right (*e.g.* the allowance and disallowance of claims against

the estate) – such that resolution of the public right requires resolution of the private right – are

also within the constitutional exercise of a bankruptcy court's core jurisdiction.[53]

The Supreme Court's earlier precedent is instructive on this point.  In *Commodity Futures*

*Trading Commission v. Schor*, Schor filed a complaint for violations of the Commodity

Exchange Act (the "CEA") against a broker who allegedly mishandled Schor's accounts.[54]

Under the statutory scheme, the Commodities Futures Trading Commission (the "CFTC"), an

Article I tribunal, was designated to hear and determine the claim.

Schor's broker counterclaimed.  The substance of the counterclaim is significant to the

holding in *Schor*.  It was a state law claim.  After Schor's accounts were liquidated, there was a

debit balance owed and the broker sought payment of that balance through the counterclaim.

The claim and the counterclaim arose out of the same accounts.  The counterclaim alleged that

the debit balance was a valid debt owed by Schor.  Schor disagreed, and argued that the debit

balance "was the result of [the broker's] numerous violations of the CEA."[55]  Essentially, Schor

argued that he should *not* have to pay the debit charges, and the broker said that Schor *should*

have to pay the charges.  The claims were based on the same debts.  The success of one dictated

the failure of the other.  In this context, the Supreme Court upheld the authority of the CFTA to

adjudicate the state-law counterclaims "aris[ing] out of the transaction or occurrence or series of

---

[52]      *See, e.g.*, 11 U.S.C. §§ 365, 502.

[53]      *See Marshall*, 131 S. Ct. 2594 at 2614, 2620 (holding that bankruptcy court can only exercise jurisdiction
within the "public rights" exception where the action at issue stems from the bankruptcy itself or would
necessarily be resolved in the claims allowance process).

[54]      *CFTC v. Schor*, 478 U.S. 833 (1986).

[55]      *Schor*, 478 U.S. at 837.

transactions or occurrences set forth in the [customer's claim]."[56]

The same context is presented here. Defendants have filed claims alleging that FairPoint has mishandled their accounts. FairPoint has counterclaimed. Defendants' proofs of claim and FairPoint's counterclaim arise out of the same accounts. FairPoint's counterclaim alleges that the balances due on FairPoint's bills represent a valid debt. Defendants disagree and argue that the balance due on FairPoint's bills is the result of FairPoint's numerous violations of applicable law. Essentially, Defendants argue that they should *not* have to pay FairPoint's charges, and FairPoint says that Defendants *should* have to pay the charges. The claims are based on the same debts. The success of one dictates the failure of the other. The Supreme Court's jurisprudence dictates that this is precisely the kind of counterclaim that can be constitutionally decided by an Article I tribunal because the state-law counterclaims "aris[e] out of the transaction or occurrence or series of transactions or occurrences set forth in the [customer's claim]."[57]

The Supreme Court's holding in *Katchen v. Landy*,[58] is also consistent with *Schor* and *Marshall*. In *Katchen*, a creditor filed a claim and in response the trustee asserted a preferential transfer action. The Bankruptcy Act in effect at the time provided that, before a creditor could be given an allowed claim, it had to pay back to the estate the amount of any preferential payment it received. The question before the Court was whether the Bankruptcy Act enabled the preference action, and an order requiring repayment to the estate, to be summarily decided as part of the allowance or disallowance of the claim that was filed against the *res*, without a plenary action. The Court held that it *could* be tried, because the objection had to be fully resolved before the claim could be allowed. It was part and parcel of the claims allowance

---

[56]     *Id.* (quotations omitted).

[57]     *Schor*, 478 U.S. at 837 (quotations omitted).

[58]     *Katchen v. Landy*, 382 U.S. 323, 340 (1966).

process.[59]

At bottom, the Supreme Court's jurisprudence consistently provides that when resolution of a counterclaim is necessary for a bankruptcy court to fulfill its obligation to determine the allowance or disallowance of claims against the estate, or resolution of the claim resolves the counterclaim, it can be a core matter consistent with the Supreme Court's "public rights" doctrine.[60] Conversely, if the proof of claim and the counterclaim are *not* so intertwined that the counterclaim implicates the allowance of the creditor's claim, entry of a final judgment on the counterclaim by an Article I bankruptcy court does not fall within the "public rights" exception and, therefore, runs afoul of Article III of the Constitution.[61]

Here, Defendants' have already answered the question of whether FairPoint's counterclaim can be finally adjudicated by this Court because, in the motion to dismiss, they unequivocally declare that the Proofs of Claim they filed and FairPoint's counterclaims are "inextricably intertwined":

> In addition, Plaintiffs' affirmative claims are so intertwined with Defendants' proofs of claim. That is, Defendants asserted in their proofs of claim "Billing Dispute Claims" seeking 'refunds and billing credits' due to "incorrect billing" by the Plaintiffs. The same pattern of billing errors by Plaintiffs have led to ***both*** overpayments by Defendants, which are the subject of at least Counts 4 and 5, as well as to affirmative claims by Plaintiffs, as stated on Counts 11-17. Thus, the issues raised by Defendants' and Plaintiffs' pre-petition claims are inextricably intertwined with Plaintiffs' Post-Petition and Post-Confirmation Claims.[62]

As noted by the Defendants, resolution of FairPoint's counterclaims necessarily resolves the Proofs of Claim.[63] As such, this adversary proceeding is a "core matter" consistent with the

---

[59]      *Id.* at 335-36.

[60]      *Marathon*, 458 U.S. at 67-70; *Marshall*, 131 S. Ct. 2594 at 2614, 2620.

[61]      *See id.*

[62]      Defendants' motion, at 18 (emphasis in original).

[63]      Defendants have long acknowledged that their proofs of claim and FairPoint's counterclaims for services rendered are necessarily interconnected. To wit, Defendants previously contended in their objection to FairPoint's Bankruptcy Rule 2004 motion that "[b]ecause of the historic difficulty of ILECs such as

Supreme Court's "public rights" jurisprudence.

Federal courts have an "unflagging" duty to hear cases that are properly before them.[64] Consistent with the Supreme Court's holding in *Marshall*, this Court should deny Defendants' motion to dismiss for lack of subject matter jurisdiction, exercise the statutory and constitutional jurisdiction it has been given, and adjudicate the claims and counterclaims at issue to final judgment.

## C.     Defendants' Argument That This Court Lacks Jurisdiction Over "Post-Confirmation Claims" Is Meritless

Defendants' arguments boil down to the notion that "Plaintiffs' claims are outside of the jurisdiction of this Court because they inextricably commingle post-confirmation, post-petition, and pre-petition claims, all of which have been improperly brought post-confirmation."[65]  The Defendants have simply ignored the precedent on these two issues.

*First*, the Second Circuit has held that a bankruptcy court may exercise jurisdiction over counterclaims that are brought after confirmation of a plan because a bankruptcy court *always* has jurisdiction over a core proceeding such as a counterclaim.[66]  In *CBI Holding*, this Court was faced with a post-confirmation dispute between BSI, as assignee of the debtor's causes of action, and the debtor's former auditors.  The auditor filed a proof of claim for payment of professional fees. BSI, in turn, filed an adversary proceeding seeking expungement of the proof of claim and asserting counterclaims for breach of contract, negligence, fraud, and breach of fiduciary duty by

---

FairPoint rendering accurate bills, the substantial and endemic operational problems acknowledged by FairPoint, and the difficulty parties in the industry have resolving billing disputes, the [Proofs of Claim] assert not only amounts due and owing by the relevant Debtor but also amounts that the relevant Debtor has inappropriately sought payment for."  *See* Declaration of Jeremy L. Katz (attached as Exhibit 11), at ¶ 5.

[64]     *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976).

[65]     Defendants' motion, at 2.

[66]     *See In re CBI Holding Co.*, 529 F.3d at 465 (holding that bankruptcy court had post-confirmation jurisdiction over counterclaims to a proof of claim because they constituted "core proceedings" under 28 U.S.C. 157(b)); *see also Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d

the auditors. A motion to withdraw the reference was denied by the district court on grounds that "the adversary proceeding qualified as a 'core proceeding' under 28 U.S.C. § 157(b)(2), and specifically as a 'counterclaim' under [section] 157(b)(2)(C) [and] as a proceeding concerning the 'allowance or disallowance of claims against the estate' under [section] 157(b)(2)(B) . . . and (O) ('other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship . . .)."[67] The district court based this decision on "its determination that the Proof of Claim and the claims in the amended complaint 'are related, arise out of the same transaction, and a determination of [BSI's] claims would likely be dispositive" of the auditor's proofs of claim.[68] This Court then proceeded to conduct a trial that resulted in judgment for BSI.

On appeal to the Second Circuit, the auditors challenged the conclusion that BSI's counterclaims were "core proceedings" that may be tried by a bankruptcy judge. The Second Circuit not only held that this Court had subject matter jurisdiction over the counterclaims, it rejected the auditors' argument those claims were, at most, non-core proceedings "related to" the bankruptcy case. At bottom, the Second Circuit was convinced of this Court's core jurisdiction over the counterclaims because "all of the claims asserted by BSI are covered by the language of 28 U.S.C. § 157(b) and are *integrally related* to the Proof of Claim that [the auditors] voluntarily submitted against the estate."[69] *The fact that BSI's adversary proceeding was brought on a post-confirmation basis was utterly irrelevant.*

In a holding that was prescient of the *Marshall* decision, the Second Circuit focused on whether BSI's claims were factually and legally interconnected with the auditor's claims to the

---

223, 231 (2d Cir. 2002) (holding that bankruptcy court had subject matter jurisdiction after confirmation to enjoin landlord from pursuing contract-based claims against buyer of debtor's assets).

[67] *In re CBI Holding Co.*, 529 F.3d at 442.

[68] *Id.* (alteration in original).

[69] *Id.* at 460.

point that they affected the auditors' ability to collect from the estate through its Proof of Claim.[70]  Satisfied that the Proof of Claim and the Claims were sufficiently interconnected, the Second Circuit held that this Court's exercise of jurisdiction over all of those claims did ***not*** breach the statutory limits of section 157(b) or the constitutional limits established by *Marathon*.[71]

As FairPoint explained above, this case is no different.  Here, Defendants contend that they are owed money for inaccurate billing, overpayments, refunds and credits.  By contrast, FairPoint disputes these contentions and maintains that Defendants have not satisfied their obligations under the Agreements for the services they purchased from FairPoint.  Indeed, Defendants have ***already conceded*** that the Proofs of Claim are "inextricably intertwined" with FairPoint's claims against Defendants.[72]  As such, jurisdiction is appropriate here under sections 1334 and 157 of title 28 and Article III of the Constitution as interpreted in *CBI Holding* and *Marshall.*

*Second,* the Defendants' temporal distinction between FairPoint's causes of action that supposedly "occurred or accrued (i) pre-petition ("Pre-Petition Claims"); (ii) post-petition, but pre-confirmation ("Post-Confirmation Claims") and (iii) post-confirmation ("Post-Confirmation Claims"),"[73] is factually misleading and legally irrelevant to this Court's jurisdiction. Defendants base their temporal argument on the fact that the billing disputes at issue here have been continuing for a long time and Defendants still refuse to pay FairPoint for these services. That is not a strength of Defendants' case.  Moreover, it supports this Court's jurisdictional authority.

---

[70]      *Id.* at 460-462.

[71]      *Id.* at 462 (citations omitted); *see also Marathon,* 458 U.S. at 67-70.

[72]      Defendants' motion, at 18.

[73]      *Id.* at 8-9.

Disputes frequently begin either before or during a chapter 11 case and continue into the post-confirmation period.  Here, Defendants have long disputed FairPoint's bills.  Nevertheless, Defendants continue to use FairPoint's services and FairPoint continues to bill for those services because the Agreements provide for monthly recurring charges on the services at issue.[74]  During the chapter 11 cases, these disputes required the Court's intervention three separate times – first, when FairPoint sought estimation of the Defendants' proofs of claim for purposes of establishing reserves for the Plan, a second time when Defendants filed their pending objection to assumption of the Agreements, and a third time when the Court authorized FairPoint to pursue an examination of Defendants regarding the causes of action brought in this adversary proceeding.

Accordingly, FairPoint is *not* asking this Court to assume jurisdiction over a new case or controversy that arose after the Effective Date of the Plan.  Rather, FairPoint is invoking this Court's core jurisdiction over a series of billing disputes that manifested themselves prior to the Effective Date and have simply continued over the course of time due to the parties' on-going business relationship.  It is well established that, in cases like this, a bankruptcy court may, through a plan of reorganization, *retain* the jurisdiction it possessed prior to confirmation even though the underlying dispute between the parties carries over into the post-confirmation period.[75]  Furthermore, resolution of this adversary proceeding – particularly counts pertaining to contract assumption and the Defendants' right to payment of cure – will require the interpretation and implementation of the Plan and Confirmation Order.[76]

---

[74]     *See e.g.,* Maine Interconnection Agreement (attached as Exhibit B to the FairPoint's complaint), at 119-153 (listing recurring charges for services provided under the Maine Interconnection Agreement such as unbundled database access, unbundled local loops, digital loops and digital designed loops etc.).

[75]     *See, e.g., In re Petrie Retail, Inc.*, 304 F.3d at 229-30;  *Hunnicutt Co. v. TJX Cos. (In re Ames Department Stores, Inc.)*, 190 B.R. 157, 161, 162 (S.D.N.Y 1995).

[76]     *See First W. SBLC, Inc. v. Mac-Tav, Inc.*, 231 B.R. 878, 883-84, (D.N.J. 1999) ("The bankruptcy court was required to interpret the Confirmation Plan to determine whether [the reorganized debtor] had defaulted on its mortgage obligations to First Western.");  *Great S. Savings Bank v. Cent. Transp. Inc. (In re Campbell Sixty Six Express, Inc.)*, 147 B.R.at 202-03 (Court found post-confirmation jurisdiction over dispute regarding entitlement to escrow funds finding that "in light of the numerous provisions providing for

This Court's decision in *Eastern Air Lines, Inc. v. Brown & Williamson Tobacco Corp., (In re Ionosphere Clubs, Inc.)*[77] is instructive on these issues. In that case, the defendants filed proofs of claim relating to *prepetition* interests in aircraft and promises of indemnification in connection with the sale of the aircraft. On a *postpetition* basis, the defendants and the debtor agreed to replace the indemnification rights with collateralized letters of credit that could be drawn only upon a "disqualifying event." This Court confirmed a plan and Eastern sold the aircraft that were subject to the defendants' agreement. That prompted the defendants to draw on the letters of credit to satisfy indemnity obligations that they contended arose on a *post-confirmation* basis.

Eastern filed a multi-count complaint that, among other things, sought declaratory judgment from this Court that the sales of the aircraft were not a disqualifying event and recovery of damages. The defendants challenged this Court's "post-confirmation" jurisdiction through a motion to dismiss. The motion to dismiss was denied, both by this Court and following an appeal to the district court, because "courts in the Second Circuit have routinely held that where a bankruptcy court would have jurisdiction over claims pursuant to [section] 157 before confirmation of a plan, the bankruptcy court retains post-confirmation jurisdiction to the extent provided in the plan of reorganization."[78] This Court recognized that "[c]onfirmation of a

---

continuing jurisdiction of the bankruptcy court, it would not be logical to now require the parties to seek resolution of disputes related to liquidation of the estate in another court."); *In re Baker*, 118 B.R. 24 (Bankr. S.D.N.Y. 1990) (bankruptcy court retained post-confirmation jurisdiction to interpret terms of lease and purchase option granted post-petition by the debtor); *see also Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108, 122 (Bankr. S.D.N.Y. 2001) (holding that bankruptcy court has core jurisdiction under section 157(b)(2)(O) with respect to matters involving the assumption of prepetition contracts); *In re Hemphill Bus Sales, Inc.*, 259 B.R. 865, 870 (Bankr. E.D. Tex. 2001) (holding same).

[77] *E. Air Lines, Inc. v. Brown & Williamson Tobacco Corp., (In re Ionosphere Clubs, Inc.)*, Case No. 89-B-10448 (BRL), 1999 Bankr. LEXIS 1875 (Bankr. S.D.N.Y. May 12, 1999); *see also E. Air Lines, Inc. v. Brown & Williamson Tobacco Corp. (In re Ionosphere Clubs Inc.)*, 1999 WL 717291 (S.D.N.Y. Sept. 15, 1999).

[78] *See In re Ionosphere Clubs Inc.*, 1999 WL 717291, at *3 (citing, *e.g., Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)* ,7 F.3d 32, 34 (2d Cir. 1993)).

chapter 11 plan does not divest the bankruptcy court of all jurisdiction."[79] Instead, "a bankruptcy

court may explicitly retain jurisdiction [by stating so in the order confirming the plan] over

aspects of a plan related to its administration and interpretation."[80] The Court also recognized

that "[w]here the plan contains broad jurisdictional provisions, the 'Bankruptcy Court's post-

confirmation jurisdiction is as broad as the statutory grant – that is, it extends to all proceedings

'related to' the bankruptcy."[81] As a result, "[w]here the bankruptcy court has proper jurisdiction

over claims under sections 157(a) and 1334(b) of Title 28 before confirmation of a plan, that

jurisdiction may be properly retained pursuant to a confirmed plan."[82]

Accordingly, the only possible limitation to this Court's jurisdiction in this case would be

in the Plan. Although the Defendants surmise that the Plan does not provide for jurisdiction,

numerous Plan provisions compel a contrary conclusion. Indeed, the Plan broadly provides for

the retention of jurisdiction by the Court over FairPoint's objections to claims, claims, and

causes of action at issue in this adversary proceeding:

- retention of jurisdiction over applications to assume contracts, allowance of cure amounts and related claims;[83]

- retention of jurisdiction over Causes of Action[84] and objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code;[85]

---

[79]    *In re Ionosphere Clubs, Inc.*, 1999 Bankr. LEXIS 1875, at \*15 (citing *Great Southern Savings Bank v. Central Transport, Inc. (In re Campbell Sixty Six Express, Inc.)*, 147 B.R. 200, 201 (Bankr.W.D. Mo. 1992)).

[80]    *See id.* at \*17 (citing *Fairfield Communities, Inc. v. Daleske (In re Fairfield Communities, Inc.)*, 142 F.3d 1093, 1095 (8th Cir. 1998)).

[81]    *See id.* at \*21 (citing, *e.g.*, *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 638 (S.D.N.Y. 1997); *Hospital & Univ. Property Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (a bankruptcy court retains post-confirmation jurisdiction to the extent provided in the plan of reorganization)).

[82]    *See id.* at \*21-22 (citing *Hunnicutt Co. v. TJX Cos. (In re Ames Dept. Stores, Inc.)*, 190 B.R. 157, 161 (S.D.N.Y. 1995); *In re Johns-Manville*, 7 F.3d at 34)).

[83]    Plan, § 11.3.3(ii); § 15(a).

[84]    "Causes of Action" is defined in the Plan as "any and all actions, causes of action, suits, controversies, rights, litigation, arbitration, proceeding, hearing, inquiry, audit, examination, investigation, complaint or charge, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or

- retention of jurisdiction over any and all adversary proceedings, applications and contested matters;[86]

- retention of jurisdiction to hear and determine any timely objections to, or requests for estimation of Disputed Administrative Expense Claims and Disputed Claims, in whole or in part;[87]

- retention of jurisdiction to hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan and the Confirmation Order;[88]

- retention of jurisdiction to hear and determine all disputes involving the existence, scope and nature of the discharges granted under the Plan, the Confirmation Order or the Bankruptcy Code;[89]

- retention of jurisdiction to hear and determine any rights, Claims or Causes of Action held by or accruing to FairPoint pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;[90]

- retention of jurisdiction to recover all assets of FairPoint and property of FairPoint's Estates, wherever located;[91] and

- retention of jurisdiction to hear any matter not inconsistent with the Bankruptcy Code.[92]

To this end, section 14.3 of the Plan provides that "from **_and after_** the Effective Date, Reorganized FairPoint shall have the right to prosecute any and all … Causes of Action … that belong to FairPoint or a Debtor-in-Possession." (emphasis added).[93]  Moreover, even if a Proof

---

unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases of FairPoint (including to the Effective Date), including, without limitation, the Avoidance Actions."  Plan, § 1.20.

[85]    Plan, § 14.3.

[86]    Plan, § 15(b).

[87]    Plan, § 15(d).

[88]    Plan, § 15(h).

[89]    Plan, § 15(j).

[90]    Plan, § 15(m).

[91]    Plan, § 15(n).

[92]    Plan, § 15(s).

[93]    Plan, § 14.3.

of Claim falls within a class that was unimpaired, section 5.13 of the Plan specifically provides that nothing in the Plan "shall be deemed to be a waiver or relinquishment of any rights, **counterclaims** or defenses that any of FairPoint or Reorganized FairPoint, as applicable, may have, whether at law or in equity with respect to any Unimpaired Claim." (emphasis added).[94]

In the face of these provisions, Defendants argue that "Plaintiffs did not specifically reserve jurisdiction over the Post-Petition Claims and, as a result, this Court does not have jurisdiction over the Post-Petition Claims."[95] Defendants have either ignored section 15(m) of the Plan or they ignored the requirements in this district for retaining jurisdiction in a plan.[96] In *In re Michael Tyson* – a case Defendants rely upon – the bankruptcy court found that a plan's retention of jurisdiction to "hear and resolve any causes of action involving the Debtors, the Reorganized Debtors, or the Estates that arose prior to the Effective Date or in connection with the Implementation of the Plan" was, without more, sufficient to retain the court's post-confirmation jurisdiction over a collection action commenced by the plan administrator of Mike Tyson's chapter 11 estate for fight proceeds held by Mike Tyson's boxing promoters.[97] Accordingly, it is far from clear what Defendants are even trying to argue.

The cases relied upon by Defendants primarily involve post-confirmation proceedings commenced by parties that have nothing to do with or, at best, have only an attenuated

---

[94]    Plan § 5.13.

[95]    Defendants' motion, at 11.

[96]    *See Norman Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 569 (S.D.N.Y. 2003) (holding that a general reservation of causes of action in a reorganization plan was sufficient to preserve reorganized debtor's ability to pursue that cause of action post-confirmation); *aff'd*, 104 Fed.Appx. 199 (2d Cir. 2004); *see also Krys v. Sugrue*, 2008 WL 4700920, at * 8 (S.D.N.Y. Oct. 23, 2008) (holding a reorganization plan does not need to include an express reference to the particular cause of action being asserted in order to retain jurisdiction); *In re Ionosphere Clubs Inc.*, 1999 WL 717291, at *3 (S.D.N.Y. Sept.15, 1999) ("[W]here the confirmed plan includes broad jurisdictional retention provisions, 'the Bankruptcy Court's post-confirmation jurisdiction is as broad as the statutory grant-that is, it extends to all proceedings related to the bankruptcy,' " quoting *In re Chateaugay Corp*., 213 B.R. 633, 638-39 (S.D.N.Y.1997)).

[97]    *Neilson v. Straight-Out Promotions, LLC (In re Michael Tyson),* 2007 WL 2379624, *3 (Bankr. S.D.N.Y. Aug. 17, 2007).

relationship to the preceding bankruptcy case; oftentimes, the reorganized debtor is not even a party to the post-confirmation proceeding and claims against the bankruptcy estate are not even at issue.[98] That is not the case here. Defendants' attempt to shoehorn a temporal distinction between "post-confirmation, post-petition and pre-petition claims" with respect to the complaint is factually incorrect and contrary to established law. For all of these reasons, this Court has core jurisdiction over this adversary proceeding.

**D.    Defendants' Remaining Jurisdictional Arguments Misstate and Misapply the Law**

Defendants also apply the wrong test to determine the scope of this Court's jurisdiction – and then get that test wrong. Most of what the Defendants argue is based on the mistaken assumption that FairPoint must show that its claims against Defendants "relate to" FairPoint's bankruptcy case.[99] To that end, Defendants' primarily argue that FairPoint cannot meet the tests established for "related to" jurisdiction established in *Pacor* and *Refco*.[100]

But Defendants are applying the wrong test. A bankruptcy court can only have "related-to" jurisdiction over a non-core matter. Analyzing the test for a "related-to" proceeding in *Refco* made sense because that case involved claims for fraud and breach of fiduciary duty that were asserted against former insiders and professional firms by a litigation trustee. This Court's jurisdiction, by contrast, "arises in" or "arises under" title 11: "it does not make sense to describe a 'core' bankruptcy proceeding as merely 'related to' the bankruptcy case; oxymoron is not a

---

[98]     *See*, *e.g.*, *Lacy v. FDIC (In re Lacy)*, 183 B.R. 890, 894-95 (Bankr. D. Colo. 1995) (court did not have post-confirmation jurisdiction because confirmed plan specifically provided that the *creditor's claim passed through the bankruptcy unaffected*); *Zerand-Bernal Group, Inc. v. Cox (In re Cary Metal Prods. Inc.)*, 152 B.R. 927, 935 (Bankr. N.D. Ill. 1993) (court did not have post-confirmation jurisdiction over proceeding commenced by *purchaser of chapter 11 debtor's* assets to enjoin product liability action commenced by *intermediate sellers of equipment to the debtor*); *N. Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d. 938, 941-42 (2d. Cir. 1944) (holding court did not have post-confirmation jurisdiction over proceeding commenced by *pre-petition bondholder* against *purchaser of chapter 11 debtor's assets* to modify confirmation order to allow time-barred claims).

[99]     Defendants' motion, at 13-16.

[100]    *Id.* (*citing*, *e.g.*, *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984); *Kirschner v. Grant Thornton LLP (In re Refco)*, 628 F. Supp. 2d 432 (S.D.N.Y. 2008)).

typical feature of congressional drafting."[101]  As such, the tests for "related to" jurisdiction under both *Pacor* and *Refco* are inapplicable.[102]  In any event, to the extent that the cases cited by Defendants stand for a different conclusion, they have been overruled by *Marshall*.

In addition, Defendants incorrectly argue that the Second Circuit "has endorsed the 'nexus methodology.'"[103]  To the contrary, the Second Circuit has never considered the "nexus methodology."[104]  The only cases cited by Defendants that are even in the Second Circuit – *Refco* and *Rahl v. Bande*[105] – are district court cases that are not binding on this Court.[106]

Even if the "nexus methodology" applied here, the claims at issue in this adversary easily satisfy that standard for post-confirmation jurisdiction.  As in *Refco*, FairPoint's Plan expressly preserves jurisdiction over any causes of action asserted by FairPoint.[107]  Moreover, prosecution of FairPoint's claims "directly implicates the 'implementation' and 'execution' of the confirmed plan"[108] for at least three reasons.[109]

*First*, as Defendants recognize, FairPoint's affirmative claims for damages are "inextricably intertwined" with the Proofs of Claim.  The validity of FairPoint's claims is part

---

[101]     *Marshall*, 131 S. Ct. 2594 at 2605.

[102]     *Geruschat v. Ernst Young LLP (In re Seven Fields)*, 505 F.3d at 260 (holding that the "close-nexus standard only applies for purposes of determining whether a federal court has jurisdiction over a non-core 'related to' proceeding in the post-confirmation context.").

[103]     Defendants' motion, at 15.

[104]     David R. Hurst *et al.*, The Scope of Post-Confirmation Bankruptcy Court Jurisdiction, American Bankruptcy Institute 4th Annual Mid-Atlantic Bankruptcy Workshop, July 31, 2008, *available at* 073108 ABI-CLE 595 (Westlaw).

[105]     *Refco*, 628 F. Supp. 2d 432; *Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004).

[106]     *See, e.g.*, *City of Olathe, Kansas v. KAR Dev. Assocs. (In re KAR Dev. Assocs.)*, 180 B.R. 629, 639–40 (D. Kan. 1995) (holding that bankruptcy courts are not bound by district court decisions); *Pereira v. Centel Corp. (In re Argo Commc'ns Corp.)*, 134 B.R. 776, 786 n. 9 (Bankr. S.D.N.Y. 1991) ("We are not bound by stare decisis to follow Judge Stewart's opinion because it emanates from a single-district Judge in a multi-Judge district.").

[107]     *Compare* Plan, § 15 *with Refco*, 628 F. Supp.2d at 443 ("With regard to the 'retention of jurisdiction' requirement, it is undisputed that the Plan expressly preserves jurisdiction over any 'causes of action by or on behalf of ... the Litigation Trustee.'").

[108]     *Refco*, 628 F. Supp.2d at 444.

and parcel with the disallowance of Defendants' claims. As such, FairPoint's claims directly implicate the Plan's provisions regarding the allowance and disallowance of claims.

*Second*, this adversary proceeding directly impacts distributions under the Plan. As noted above, the Court previously estimated the amount of cash that was required to be reserved under the Plan for the Proofs of Claim. The establishment of the Segtel Reserve Amount was integral to the implementation of the Plan. Pursuant to section 5.4.2(c) of the Plan, each holder of a Prepetition Credit Agreement Claim may be entitled to a "Cash Payment," subject to adjustments for cash used to pay other classes of claims and unclassified claims. The reserves established under section 9.22 of the Plan hold cash that is payable to disputed claims if such disputed claims become allowed for purposes of the Plan. By contrast, if those claims are ultimately disallowed, the money reserved for them may be payable to the class of Prepetition Credit Agreement Claims. Specifically – and subject to the satisfaction of certain enumerated conditions – section 5.4.2(e) of the Plan provides that each holder of an Allowed Prepetition Credit Agreement Claim shall receive "on the applicable Distribution Date, if any, such holders' Ratable Proportion of Cash Distributions out of the Reserves that are no longer required to be reserved for the benefit of any Person other than the holders of Allowed Prepetition Credit Agreement Claims."[110] As such, this adversary proceeding is directly related to the implementation and execution of the Plan.

*Third*, litigation of some, if not all, of FairPoint's claims will require interpretation, implementation and/or execution of this Court's prior orders.[111] FairPoint commenced this action by obtaining an order from this Court authorizing discovery over the billing disputes at

---

[109]    *See, e.g.*, Plan §§ 3.1, 5.13, 10.1, 10.6, 11.3.3.(iii), 13.2, 13.3, 13.4, 14.1, 14.2, 14.3 and 14.4.

[110]    Plan, § 5.4.2(e).

[111]    *See, e.g., In re Petrie Retail, Inc.*, 304 F.3d at 230 (finding subject-matter jurisdiction because "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders").

issue.  In addition, the claims at issue here will require declaratory judgment regarding

Defendants' rights to refunds, credits and other forms of cure in connection with the assumption

of the Agreements.  That relief will require interpretation of section 11.3.3(iii) of the Plan and

paragraph 45 of the Confirmation Order.[112]  At a minimum, the relief requested in this action

relates to the chapter 11 cases.

Defendants' remaining arguments to the contrary do not negate this Court's jurisdiction.

For instance, Defendants argue that resolution of the complaint will not have an impact on the

Plan because they hold Class 6 Claims, a class in which all members are paid in full.  But

Defendants may not have any claims at all.  This Court must determine whether disputing

FairPoint's bills even qualifies as a "claim" for purposes of section 101(5) of the Bankruptcy

Code.  Moreover, this Court must interpret section 11.3.3(iii) of the Plan and paragraph 45 of the

Confirmation Order to determine whether Defendants have any legal entitlement to the refunds

and credits they demand.   In any event, as noted above, the Plan expressly provides that

Defendants' proofs of claim are subject to FairPoint's counterclaims even if they would be

entitled to payment in full.[113]

Defendants also suggest that the Court lacks jurisdiction because the Disclosure

Statement indicates that FairPoint is involved in litigation arising in the normal course of

business that is not expected to have a material impact on recoveries under the Plan.  But the fact

that the Disclosure Statement does not characterize litigation against Defendants as "material" is

in no way dispositive of this Court's jurisdiction.  There is no requirement that litigation needs to

---

[112] In *Thickstun Bros. Equip. Co. v. Encompass Servs. Corp. (In re Thickstun Bros. Equip. Co.)*, 344 B.R. 515, 522 (6th Cir. BAP 2006), the Bankruptcy Appellate Panel for the Sixth Circuit adopted the analysis set forth in *Resorts Int'l* and applied the "close nexus" test to conclude that the bankruptcy court had post-confirmation jurisdiction to interpret plan provisions to determine whether the plan preserved the debtor's right to challenge a claim post-confirmation without filing a formal claim objection in the bankruptcy court. The Court noted that "[i]t is difficult to imagine a closer nexus to the Debtor's bankruptcy case and the confirmed Plan than this direct request for interpretation and clarification of the Plan's terms." *Id.*

[113] *See* Plan, § 5.13.

be "material" for it to be properly adjudicated by a bankruptcy court.  For example, the statutory

floor for a preference action is $5,850 in accordance with section 547(c)(9) of the Bankruptcy

Code.[114]  Yet the jurisdiction of this Court over a post-confirmation preference action is well

established.[115]

Although Defendants do not dispute that this Court has jurisdiction over prepetition

claims,[116] they posit two reasons why this Court should not exercise that jurisdiction.  Both fail.

*First*, Defendants assert that because portions of the Proofs of Claim are nothing more than

billing disputes, which do not give rise to a claim or a "right to payment," the Proofs of Claim

should be adjudicated in a different forum.[117]  That is patently absurd.  The remedy for filing an

illegitimate claim is not adjudication in a different forum, but disallowance and expungement of

the claim.

*Second*, Defendants assert that the "issues raised by Defendants' and Plaintiffs' pre-

petition claims are inextricably intertwined with Plaintiffs' Post-Petition and Post-Confirmation

Claims."  For precisely that reason, the complaint constitutes a "core-proceeding" under

*Marshall* over which this Court has "core" jurisdiction.  Nevertheless, Defendants worry that

"not only are these claims intertwined, their resolution depends on what will be a time-

consuming examination of literally tens if not hundreds of thousands of billing entries (or more)

---

[114]    11 U.S.C. § 547(c)(9).

[115]    *See*, *e.g.*, *Shandler v. DLJ Merchant Banking, Inc. (In re Insilco Technologies, Inc.)*, 330 B.R. 512, 519-20 (Bankr. D. Del. 2005) (holding that bankruptcy court had post-confirmation jurisdiction over preference action brought post-confirmation because it was a core-proceeding), *aff'd* 394 B.R. 747, 748 (D. Del. 2008); *see also Winston & Strawn v. Kelly (In re Churchfield Mgmt. & Inv. Corp.)*, 122 B.R. 76, 79-80 (Bankr. N.D. Ill. 1990) (holding that bankruptcy court had "arising under" jurisdiction to hear section 547 and 548 avoidance actions brought by successor to chapter 11 trustee); *c.f. Rahl*, 316 B.R. at 132 (holding fraudulent transfer claim asserted by a litigation trustee pursuant to section 544 of the Bankruptcy Code "arises under" title 11 because it was based on right given by the Bankruptcy Code).

[116]    Defendants' motion, at 17.

[117]    *Id.* at 17-18.

to tease apart legitimate and correct charges and credits from erroneous charges and credits."[118] This is not a legitimate reason to divest this Court of jurisdiction in favor of administrative agencies. Courts address billing and collection disputes all the time. The mere fact that the bills are voluminous is not cause for referral to an administrative agency. As counsel to Defendants previously represented to this Court, the disputes at issue are simply **"a matter of legal analysis of looking at the bills, looking at the law and understanding them."[119]**

For the reasons stated above, this Court has all the jurisdictional authority it needs to adjudicate this dispute. Accordingly, the Defendants' motion to dismiss FairPoint's causes of action against Defendants should be denied.

**III.** *Defendants' Ill-Conceived Invocation Of Primary Jurisdiction Should Be Denied*

Defendants' attempt to refer certain of FairPoint's claims[120] to various federal and state agencies under the doctrine of primary jurisdiction should be seen for what it is – an attempt by Defendants to pursue their baseless claims in multiple forums – while delaying resolution of FairPoint's claims against them. In pursuit of this effort, Defendants take great pains to make the issues raised before this Court sound more complicated than they are. In order to avoid this Court's scrutiny of their accusations, Defendants seek a more favorable forum and additional bites at the apple by grasping at any state or federal agency that they hope will hear their demands. Once Defendants' smokescreen is blown clear, however, it is evident that these issues can be resolved efficiently and expeditiously by this Court. Accordingly, Defendants' forum-shopping request for primary jurisdiction referral should be denied.

Notably, it was Defendants who sought resolution of their claims in this Court at the start.

---

[118]    *Id. at* 18.

[119]    October Transcript, at 79:21-79:22.

[120]    Defendants seek to have Counts 4, 5, 8A, 8B, 8C, 8D, 8G, 10, 13, 14, 16 and 17 referred to five separate state and federal forums.

Indeed, each of their initial claims was filed with this Court, without a single mention that "agency expertise" may be required for their resolution. Defendants have availed themselves of this Court's resources during a 20-month-long proceeding before this Court, which has included document discovery, motions, an estimation of potential claims, and two court appearances for oral argument – and never once (prior to the motion to dismiss) have they suggested that this Court was not the proper forum for their claims. Simply put, Defendants, as the original claimants, should be held to the forum they selected – this Court. They should not be allowed to seek alternative tribunals simply because they have received rulings from this Court that they don't like. This Court has presided over the claims at issue for nearly two years, and it is an affront to judicial efficiency and an abuse of this Court's limited judicial resources for Defendants to seek primary jurisdiction referral at this late date.

The motion further evinces a fundamental misunderstanding of the doctrine of primary jurisdiction. Defendants argue that the doctrine of primary jurisdiction "requires" this Court to refer certain Counts to administrative agencies.[121] But courts have held that primary jurisdiction need not be invoked "every time a court is presented with an issue conceivably within the agency's ambit."[122] The doctrine "is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency."[123]

Unless specifically set forth by statute, a primary jurisdiction referral is not a "requirement," but rather is "a prudential doctrine designed to allocate authority between courts and administrative agencies."[124] Accordingly, courts have substantial discretion regarding

---

[121] Defendants' motion, at 24, 26.

[122] *Brown v. MCI Worldcom Network Servs. Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).

[123] *Id.*

[124] *Id.* at 1173; *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 750 (10th Cir. 2005).

whether or not to invoke the primary jurisdiction doctrine.  It is up to the reviewing court to determine whether a matter lies within its competence, or so intimately implicates technical or policy matters that agency expertise is necessary.[125]  Although Defendants correctly recognize that "primary jurisdiction allows for the referral of matters that extend 'beyond the conventional experience of judges,'"[126] they fail to recognize that each issue they seek to have referred is squarely within the competency of this Court.

In order to determine which matters are properly the subject of primary jurisdiction referrals, courts have developed a series of tests to guide them through the primary jurisdiction process.  Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction,"[127] the Second Circuit has generally considered four factors when assessing a primary jurisdiction referral request:

> (1) whether the question at issue is within the conventional expertise of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.[128]

Viewed from the perspective of the Second Circuit test, it becomes clear that primary jurisdiction referral is not appropriate in this instance.

---

[125]     *See Clark v. Time Warner Cable*, 523 F.3d 1110, 1114-15 (9th Cir. 2008).

[126]     Defendants' motion, at 19 (citing *U.S. ex rel. Taylor v. Gabelli*, 345 F.Supp. 2d 340, 350 (S.D.N.Y. 2004)).

[127]     *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).

[128]     *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006) (citing *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006)).

**A.      Interpretation of the Issues Raised is Well Within the Conventional Expertise of This Court, and No Particular Agency Expertise is Necessary**

It's no surprise that Defendants merely provide conclusory statements in support of their argument that Counts 4, 5, 13, 14, 16 and 17 (the "<u>Tariff Enforcement Counts</u>") should be referred variously to the Federal Communications Commission ("<u>FCC</u>") and state public utilities commissions (the "<u>PUCs</u>").  Instead of citing relevant judicial precedent (of which there is none) or providing reasoned arguments, Defendants simply conclude that the Tariff Enforcement Counts are "best resolved by the . . . agency."[129]  The reason that Defendants provide no support for their position is that no such support exists.  Courts, including the Second Circuit, have long held that "primary jurisdiction does not apply to cases involving the ***enforcement*** of a tariff as opposed to the ***reasonableness*** of a tariff."[130]  Here, Defendants have not challenged the reasonableness of the tariff under which FairPoint provided services to Defendants.  As discussed in detail below, none of the Tariff Enforcement Counts "involve[s] the statutory reasonableness of the tariff or any abstract concepts,"[131] but rather merely requires this Court to engage in the routine interpretation of a contract between two parties.  Similarly, the threshold legal issues in Count 8 involve nothing more than routine interpretation of contractual terms.  Prior to even reaching the purportedly complex issues that the Defendants claim are at the heart of this matter, this Court must make a determination regarding whether Defendants may recover consequential damages at all under the terms of the underlying agreement.

**B.      Counts 4, 5, 10, 13, 14 and 16 Involve the Routine Enforcement of Contract or Tariff Provisions**

As discussed above, the Second Circuit has concluded that "primary jurisdiction does not

---

[129]      Defendants' motion, at 28.

[130]      *NCA*, 46 F.3d 220, 223 (2d Cir. 1995) (emphasis supplied) (citing *C.A.B. v. Aeromatic Travel Corp.*, 489 F.2d 251, 253 (2d Cir. 1973); *Danna v. Air France*, 463 F.2d 407, 410 (2d Cir. 1972)).

[131]      *NCA*, 46 F.3d at 223.

apply to cases involving the enforcement of a tariff as opposed to the reasonableness of a tariff."[132]  Courts regularly interpret tariff provisions as matters of law, needing no agency expertise to render opinions on straightforward matters, such as the ones at issue here.[133]

Interpreting the meaning of words in a tariff is precisely what this Court is being asked to do in here.  For example, this Court is requested to determine "whether a service outage existed within the meaning of the tariff and if so, for how long."[134]  It is abundantly clear that a court may properly "interpret the terms of a tariff," and this Court is being asked to do no more than this.[135]  Defendants have not challenged the reasonableness of the tariff, and indeed the only task presented to the Court by the Tariff Enforcement Counts is to "to interpret the language in a contract and apply existing . . . tariffs to make a determination on compensation due."[136]  The various state and federal agencies' "role in regulating the industry does not change the fact, however, that the precise question presented here is the meaning of the parties' contract as it relates to" the disputed charges.[137]  Even Defendants have admitted that resolving these claims simply requires the interpretation of existing tariff provisions, stating at argument that determining the compensation owed among the parties was merely "a matter of a legal analysis of looking at the bills, looking at the law and understanding them."[138]  By Defendants' own

---

[132]    *Id.*

[133]    *See, e.g., Brown*, 277 F.3d at 1172 (9th Cir. 2002) (finding that "[p]rimary jurisdiction is not implicated simply because a case presents a question, over which the FCC could have jurisdiction, regarding the interpretation of a single tariff");  *Splitrock Props. v. Qwest Commc'ns Corp.*, 2010 U.S. Dist. LEXIS 73057, at *18 (D.S.D. 2010) ("Where interpretation of the relevant tariff is straightforward, the primary jurisdiction doctrine does not apply."); *PacifiCorp v. Nw. Pipeline GP*, 2010 U.S. Dist. LEXIS 83040, at *35 (D. Or. 2010) (declining primary jurisdiction referral where the matter involved "a straightforward [tariff] interpretation").

[134]    Defendants' motion, at 28.

[135]    *Pac-West Telecomm, Inc. v. MCI Commc'ns Servs.*, 2011 U.S. Dist. LEXIS 30044, at *9 (E.D. Cal. 2011)

[136]    *Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va.*, 759 F. Supp. 2d 772, 788 (E.D. Va. 2011).

[137]    *Id.*

[138]    October Transcript, at 79:21-79:22.

admission, the Tariff Enforcement Counts do not represent the type of complex matter for which an "expert agency" opinion is required and this Court should feel confident in its ability to render a reasoned opinion as to each.

Count 10 similarly involves the enforcement of what effectively amounts to contract terms and should be viewed no differently by this Court than the interpretation of a tariff. When FairPoint agreed to become subject to the Performance Assurance Plans ("PAPs"), they became subject to specific guidelines concerning the performance of their telecommunications network. Determining if FairPoint owes additional credits pursuant to the explicit terms of the PAPs requires no greater expertise than does determining what is owed under a tariff. Defendants continue to attempt to convince this Court that anything within the jurisdictional ambit of a federal or state agency requires special expertise. In fact, as FairPoint has shown, telecommunications tariffs, statutes and regulations are regularly interpreted and enforced as party of the daily business of courts.[139] This Court should not allow Defendants to muddy the waters and make these claims anything other than what they are – the routine interpretation and enforcement of contracts.

Moreover, Defendants' contention that the "PAPs . . . are compacts between [FairPoint] and the state PUCs,"[140] illustrates the fundamental weakness in Defendants' case. Assuming this is true, Defendants have no standing to privately enforce provisions of the FairPoint PAPs. Defendants have not been "deputized" to police PAP credits. Defendants have no cause to interfere with agreements between FairPoint and state agencies and certainly no standing to seek payment under these agreements before this Court.

---

[139]     Indeed, Section 207 of the Communications Act permits any person claiming to be damaged by a common carrier to bring a complaint *either* to the FCC *or* to "any district court of the United States of competent jurisdiction," *but not both*. 47 U.S.C. § 207.

[140]     Defendants' motion, at 27.

**C.**     **Count 17 Involves Tariff Provisions Routinely Interpreted By Courts**

In Count 17, FairPoint seeks a declaratory ruling that it is entitled to require a cash deposit from Defendants due to Defendants' failure to timely pay its bills under the Maine Interconnection Agreement.  In order to have this straightforward Count referred to federal and state agencies, Defendants have adopted the perplexing position that whether or not a debtor has a "proven history of late payments" is a determination requiring special agency expertise. Besides the absurdity of this statement on its face – surely this Court is able to determine whether the "paid on" date is later in time than the "due on" date – the Second Circuit has specifically held that whether a party to a tariff "had timely paid its bills" is a "rather simple factual question."[141]  In overturning the district court's order referring the matter to the FCC on primary jurisdiction grounds, the Second Circuit concluded that the issue of "whether NCA had timely paid its bills . . . could easily be resolved by a district court in a reasonable amount of time[,] . . . does not require the FCC's policy expertise, or it's specialized knowledge, and is within the district court's experience."[142]  Regardless of Defendants' unsupported position that "late payment cannot be 'proven' until the [underlying] dispute is resolved," courts have made clear that a determination of whether a payment is late or not is well within their expertise. Accordingly, this Court should find that resolution of this Count is confidently within its traditional experience.

**D.**     **This Court Should Resolve Threshold Legal Issues Raised In Count 8 Prior to Even Considering a Primary Jurisdiction Referral**

As with their other requests for primary jurisdiction referral, Defendants rely on conclusory and unsupported statements.  Rather than listing the manner in which FairPoint has allegedly violated the Communications Act of 1934, as amended (the "Act"), Defendants simply

---

[141]     *NCA*, 46 F.3d at 223.

state that undefined Communications Act violations have occurred, as if simply invoking the Act will conjure up a primary jurisdiction referral. Defendants attempt to recast a relatively straightforward billing dispute as something more complicated; but there is no need to delay resolution of the claims before this Court. Where there are no specific factual allegations in dispute – nor are there any novel policy questions – this Court must find that there is simply nothing for an expert agency to do. Primary jurisdiction referral is not a mechanism for Defendants to figure out if a claim exists – rather it is intended to aid judicial efficiency by answering specific factual questions or interpretive policy questions that are "beyond the conventional experience of judges."[143] Even with the paucity of factual information provided by Defendants, there can be no serious argument that there are any factual disputes requiring an agency's technical expertise. Billing disputes are routinely resolved by courts and this case should be no exception.

Yet, Defendants seek again and again to muddy the waters by injecting unnecessary complexity into FairPoint's claims. Importantly, Count 8A – the threshold question for this Court to answer – does not touch any "technical or policy considerations" as Defendants suggest,[144] but rather involves straightforward legal issues of waiver and tariff enforcement. Specifically, FairPoint is asking this Court to confirm that duly-filed tariffs[145] expressly preclude Defendants from seeking damages for "lost revenue, costs incurred to obtain alternative services and other forms of incidental and consequential damages."[146] The question of whether FairPoint was in violation of certain provisions of the Act (and it was not) is entirely irrelevant until the threshold question of whether Defendants, under the applicable agreements, have the right to

---

[142]    *Id.*

[143]    *U.S. ex rel. Taylor v. Gabelli*, 345 F.Supp.2d 340, 350 (S.D.N.Y. 2004).

[144]    Defendants' motion, at 22.

[145]    Count 8 involves tariffs filed with the FCC, New Hampshire PUC, Maine PUC and Vermont PUC.

seek any damages ***at all*** under their theory.  Such a determination is a question of law, and it does not require any particular agency expertise and is within the conventional experience of this Court.[147]  Before even reaching Counts 8B, 8C, 8D and 8G, the legal issue of waiver raised in 8A must be resolved.  There simply is no reason for this Court to engage in a detailed inquiry when the matter may easily be disposed of by reaching the proper conclusion that Defendants are barred from raising these consequential damages claims at all.  Moreover, as discussed in greater detail in below, Defendants should not be heard to claim that the FCC is the proper body to adjudicate all claims arising under the Act, as they brought their proofs of claim before this Court in the first instance.  Accordingly, it would be inappropriate for this Court to refer the threshold issues to the FCC or state PUCs under the doctrine primary jurisdiction, as such determinations are within the routine experience of the judiciary.[148]

E.      **There is No Particular Question at Issue That is Within the Agency's Discretion**

        Although Defendants would have this Court believe that the claims at issue in this proceeding involve "intricate questions of fact and policy,"[149] nothing could be further from the truth.  Indeed, Defendants themselves felt strongly enough about the ability of this Court to resolve their claims that they submitted the underlying proofs of claim more than ***one year*** before suddenly deciding that they would rather pursue their case before state and federal agencies.  The issues presented to this Court are ones of routine contract and tariff interpretation,

---

[146]    FairPoint's complaint, at 31.

[147]    *See Schiller*, 449 F.3d at 295 (2d Cir. 2006) (holding that "the doctrine of primary jurisdiction does not extend to pure issues of law"); NCA, 46 F.3d at 223 ("[P]rimary jurisdiction does not apply to cases involving the enforcement of a tariff.").

[148]    Although Defendants' rely upon the FCC's *Core* decision, that decision does not support a primary jurisdiction referral in this case.  *See* Defendants' motion, at 22-23, (citing *Core Commc'ns v. Verizon Maryland, Inc.*, 18 F.C.C. Rcd. 7962 (2003)).  In *Core*, the FCC acknowledges Second Circuit precedent holding that "an incumbent LEC's obligations [under Section 251 of the Act] . . . flow solely from contract law enforceable only in a court."  *Core*, 18 F.C.C. Rcd. at 7973 (citing *Trinko v. Bell Atl. Corp.*, 305 F.3d 89 (2d Cir. 2002)).

[149]    Defendants' motion, at 20.

and do not implicate technical telecommunications policy issues.  FairPoint is simply asking this Court to apply the law to the filed tariffs.  As there is no technical or policy question being raised at all, this prong of the test cannot be satisfied.  The FCC already has spoken as to the reasonableness of the filed tariffs, and the interpretation and enforcement of these filed tariffs is a question of law best left to this Court.

## F.  With a Large Volume of Existing Precedent, There is No Danger of Inconsistent Rulings

This case does not call for agency interpretation of a novel statutory or regulatory question, or otherwise demand an agency's policy or technical expertise.  Given the fact that the FCC "has regularly decided" cases of this nature,[150] and that "[t]he FCC and PUCs have decided literally thousands of cases concerning whether particular practices in the communications industry are 'just, reasonable, and nondiscriminatory,'"[151] it seems bizarre indeed for Defendants to claim that there is a "serious risk of inconsistent standards being applied,"[152]  Defendants also suggest that courts somehow lack the necessary expertise to determine if a carrier's behavior complies with the "just and reasonable" standard contained within the Act.  In truth, many courts have interpreted whether a carrier's behavior is "just and reasonable" under telecommunications statutes.[153]

Given this meaningful prior precedent, there cannot be any serious argument that this

---

[150]     *Id.* at 22.

[151]     *Id.* at 22-23.

[152]     *Id.* at 23.

[153]     *See, e.g., Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 2010 U.S. Dist. LEXIS 137860, at *23-*24 (W.D.N.Y. 2010) (failure to establish unjust and unreasonable discrimination in violation of section 202(a) of the Act); *see also Wholesale Telecom Corp. v. ITC Deltacom Commc'ns, Inc.*, 176 Fed. Appx. 76, 79 (11th Cir. 2006) (finding meritless claims of unjust and unreasonable discrimination against a long distance provider); *Nwabueze v. AT&T Inc.*, 2011 U.S. Dist. LEXIS 8506, at *28 (N.D. Cal. 2011) (finding that billing for third party services is not subject to the just and reasonable standard of Title II of the Act); *Am. Tel. & Tel. Co. v. Jiffy Lube Int'l, Inc.*, 813 F. Supp. 1164, 1167 (D. Md. 1993) (finding that policy of holding customers absolutely liable for unauthorized calls was not unjust and unreasonable under the Act).

Court is operating without agency guidance and is therefore in danger of applying inconsistent standards. Indeed, the Second Circuit has found that, particularly where "there are many precedents, including those of the FCC," several of which Defendants cite, there can be "no danger of inconsistent rulings."[154] Importantly, to FairPoint's knowledge, there also are no pending rulemaking proceedings at the relevant state or federal agencies that may potentially alter the rules of the game. Given the "literally thousands of cases,"[155] on which this Court may draw, it should feel confident that any decision rendered will be fully consistent with past precedent, and, accordingly, that no danger of inconsistent rulings is present.

Further, Defendants' primary jurisdiction referral request is wholly inconsistent with obtaining uniform rulings. Indeed, rather than having all claims heard and decided by this Court (the very model of consistency), Defendants seek to have their clams heard by no fewer than *five different forums*. If Defendants' ill-conceived primary jurisdiction request were to be granted (and it should not be), FairPoint would be forced to defend itself against Defendants' frivolous claims at the Federal Communications Commission, the New Hampshire PUC, the Vermont PUC, the Maine PUC and before this Court. Moreover, many of the claims at issue overlap or interlock with one another, meaning that incompatible decisions among forums could have serious impacts on the case as a whole. If consistency of interpretation is what this Court seeks, it should retain the whole matter and look to the substantial body of federal and state agency precedent to guide its decision.

### G. Application for Referral to Federal and State Agencies Was Made Long After Defendants Brought Their Claims Before This Court

On March 18, 2010, Defendants sought relief from this Court by submitting four proofs

---

[154] *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 60-61 (2d Cir. 2006); *see also Global Crossing Bandwith, Inc. v. OLS, Inc.*, 2009 U.S. Dist. LEXIS 22402 (W.D.N.Y. 2009) (citing *Verity Int'l*).

[155] Defendants' motion, at 22.

of claim.  Now, having had the validity of those claims questioned in this Court, Defendants now seek what they hope may be a more sympathetic ear in state and federal agencies.  Make no mistake, Defendants waited more than **one year** (and until after this Court suggested that their claims may be treated unfavorably) before raising the primary jurisdiction issue.  Now, the forum-shopping nature Defendants' primary jurisdiction request is all too transparent. Defendants brought their claims before this Court in the first instance, and should not now be allowed to seek what they hope may be greener pastures in federal and state agencies.  In a recent order denying primary jurisdiction motion under similar circumstances, one court found the "appearance of forum shopping . . . overwhelming."[156]  Indeed, that judge felt that if the opening stages of the court proceeding had not gone poorly for the movant, just as here, there was "no doubt . . . it would not have filed its [primary jurisdiction] referral motion."[157]  This Court should find similarly.  Defendants should not be allowed to consume the resources of the chapter 11 estates and this court for many months, and then postpone resolution of FairPoint's claims by seeking alternative adjudication.

## H.  Questions of Law Are Not Properly the Subject of Primary Jurisdiction Referral

By Defendants' own admission, this Court is presented only with "a matter of a legal analysis of looking at the bills, looking at the law and understanding them."[158]  This is a critical concession.  Courts, including the Second Circuit, have concluded that "the doctrine of primary jurisdiction does not extend to pure issues of law."[159]

---

[156]    *MetroPCS Wireless, Inc. v. Cmty. Voice Line*, No. 11-CV-00501-JFM, Memo to Counsel (D. Md. Jul. 6, 2011), attached as Exhibit 12.

[157]    *Id.*

[158]    October Transcript, at 79:21-79:22.

[159]    *Schiller*, 449 F.3d at 295 (2d Cir. 2006) (citing *Balt. & O. Chi. Terminal R.R. v. Wis. Cent.*, 154 F.3d 404, 411 (7th Cir. Ill. 1998) (holding that "an issue of law . . . did not have to be referred to the agency")); *see also F.P. Corp. v. Golden West Foods*, 807 F. Supp. 1228, 1229 (W.D. Va. 1992) (holding that "if the question is solely one of law, a district court does not need to refer matters" to the relevant agency) (citing

43

Here, neither the reasonableness of the tariff nor the core facts are in dispute.  Both

Defendants and FairPoint agree that obligations were incurred pursuant to tariff.  As Defendants

have stated, before the Court is simply "a matter of a legal analysis of looking at the bills,

looking at the law and understanding them,"[160]  and therefore the matter is not properly the

subject of primary jurisdiction referral.

## I.  Primary Jurisdiction Referral in This Instance Will Result in Unnecessary Costs, Complications and Delay

Even if this Court finds that Defendants satisfy parts of the test for primary jurisdiction

referral (and they do not), the Court "must also balance the advantages of applying the doctrine

against the potential costs resulting from complications and delay in the administrative

proceedings."[161]  The costs and potential for delay in this proceeding are substantial.  Defendants

seek to have various claims heard in no fewer than *five separate forums*.  The FCC alone

frequently takes *years* to resolve primary jurisdiction referrals.

A review of primary jurisdiction cases since 2008 referred by courts to the FCC confirms

FairPoint's concerns that a primary jurisdiction referral will result in a substantial delay in these

proceedings.  The survey FairPoint conducted reveals that primary jurisdiction cases took an

average of more than 28 months from referral until FCC disposition, and in one instance took

nearly *six years*.[162]  Given this clear record, this is an appropriate occasion for the Court to apply

---

*Montgomery Ward and Co. v. Roy Stone Transfer Corp.*, 329 F.2d 172, 174 (4th Cir. 1964) (citing *Great Northern Ry. Co. v. Merchants Elevator Co.*, 259 U.S. 285 (1922))).

[160]  October Transcript, at 79:21-79:22.

[161]  *Sprint Nextel Corp. v. DBSD N. Am., Inc. (In re DBSD North America, Inc.)*, 427 B.R. 245, 250 (S.D.N.Y. 2010) (citing *NCA*, 46 F.3d at 223).

[162]  *See  All Am. Tel. Co., e-Pinnacle Commc'ns, Inc., & ChaseCom*, Memorandum Opinion and Order, 26 F.C.C. Rcd. 723 (2011) (approximately 11 months); *Improving Pub. Safety Commc'ns in the 800 MHz Band*, Fifth Report and Order, 25 F.C.C. Rcd. 13874 (2010) (approximately 27 months);  *City of Dearborn v. Comcast of Mich. III Inc.*, Order, 25 F.C.C. Rcd. 2600 (2010) (approximately 15 months); *United Tel. Co. of Kansas*, Order, 25 F.C.C. Rcd. 1648 (2010) (approximately 27 months); *Enhanced 911 Emergency Calling Sys.*, Order, 23 F.C.C. Rcd. 11687 (2008) (approximately 22 months); *Linda Thorpe v. GTE Corp.*, Memorandum Opinion and Order, 23 F.C.C. Rcd. 6371 (2008) (approximately 68 months).

the sound principle that primary jurisdiction be applied sparingly because inordinate delay is likely in a case which the Court is eminently qualified to resolve in the near term.

The motivation behind Defendants' tactics here should be transparent to the Court – unabashed forum shopping. But whatever the motivation, this is a case that falls squarely within the expertise of this Court, and not one for which primary jurisdiction referral is appropriate. As an initial matter, Defendants fail to satisfy the Second Circuit's four-prong test for referral. The enforcement of a tariff is well within the Court's competence, no particular issue has been raised within the agency's discretion, a large body of precedent obviates any danger of inconsistent rulings and the application to the agency (made only recently in conjunction with Defendants' motion)[163] came more than one year after they first brought these matters to this Court. Further, as an admitted matter of law, the primary jurisdiction doctrine simply is inapplicable to the instant case. Finally, the potential for expense, complication and delay is would be so great with referral of issues to five separate forums that this Court has almost no choice but to retain the matter in the interests of the efficient administration of justice. This Court should require that Defendants try their claims in the forum in which they initially brought them, and not allow them to proceed scattershot until they find a forum they like.

## COUNTERMOTION FOR DETERMINATION OF CORE STATUS PURSUANT TO 28 U.S.C. 157(B)(3)

For the reasons set forth herein, FairPoint submits that this Court has the authority to hear and determine this adversary proceeding as a core proceeding arising under title 11, or arising in a case under title 11, and that it may enter appropriate orders and judgments, subject to review under section 158 of this title, all in accordance with 28 U.S.C. § 157(b)(1), (2), and the Supreme

---

[163] On July 5, 2011, FairPoint filed a letter requesting this Court to enjoin Defendants' unilateral effort to have the FCC mediate issues raised in Defendants' claims, which is incorporated by reference here. *See* FairPoint Letter, dated July 5, 2011. [Docket No. 11]. For the reasons set forth therein, Defendants' violated the injunction and discharge provisions contained in the Plan and the Confirmation Order, and completely disregarded this Court's jurisdiction over the Proofs of Claim and this adversary proceeding.

Court's decision in *Marshall*.[164]  Accordingly, FairPoint requests under 28 U.S.C. § 157(b)(3) that this Court determine that the complaint filed by FairPoint in this adversary proceeding is a core proceeding.

WHEREFORE, FairPoint requests that this Court (i) deny the Defendants' motion to dismiss in its entirety, (ii) grant FairPoint's countermotion for a determination that the complaint filed by FairPoint in this adversary proceeding is a core proceeding under 28 U.S.C. § 157 and the Supreme Court's decision in *Marshall*, and (ii) grant FairPoint such other and further relief as is just.

DATED: July 25, 2011
      New York, New York

/s/ James T. Grogan
Luc A. Despins, Esq.
James T. Grogan, Esq.
PAUL HASTINGS LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
Telephone:  (212) 318-6000
Facsimile:   (212) 319-4090

*Counsel to Plaintiffs*

---

[164]    *See supra*, at p. 10-19 (discussing how this adversary proceeding constitutes a "core-proceeding" over which this Court has jurisdiction under 28 U.S.C. § 157(b) and *Marshall*, 131 S. Ct. 2594).

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
                                           :

**In re:**                                  :     **Chapter 11**
                                           :

**FAIRPOINT COMMUNICATIONS, INC.,** *et al.***,**:     **Case No. 09-16335 (BRL)**
                                           :

            **Reorganized Debtors.**    :     **(Jointly Administered)**
                                         :

---------------------------------------------------------------x
                                           :

**FAIRPOINT COMMUNICATIONS, INC.,**  :
**NORTHERN NEW ENGLAND TELEPHONE**  :
**OPERATIONS LLC AND**           :     **Adv. Proc. No. 11-01759 (BRL)**
**TELEPHONE OPERATING COMPANY OF**  :
**VERMONT LLC**                   :
                                         :

              **Plaintiffs,**          :
                                         :

**v.**                                    :
                                         :

**SEGTEL, INC. AND**                :
**SEGNET TECHNOLOGIES, INC.**      :
                                         :

              **Defendants.**         :
---------------------------------------------------------------x

## APPENDIX

**EXHIBITS TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AND COUNTERMOTION FOR DETERMINATION OF
CORE STATUS PURSUANT TO 28 U.S.C. 157(b)(3)**

Attached hereto are the following exhibits to Plaintiffs' Opposition to Defendants'

Motion to Dismiss and Countermotion for Determination of Core Status Pursuant to 28 U.S.C.

157(b)(3).

Exhibit 1           Transcript of Proceedings, dated October 20, 2010 [Main Case Docket No. 1851] (relevant excerpts)

Exhibit 2           FairPoint's Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Main Case Docket No. 2115] (without exhibits)

Exhibit 3            Confirmation Order [Main Case Docket No. 2113] (without exhibits)

Exhibit 4            FairPoint's Approved Second Amended Disclosure Statement [Main Case
                     Docket No. 915] (relevant excerpts)

Exhibit 5            Segtel's Objection to Cure Amounts Proposed Under FairPoint's Plan of
                     Reorganization [Main Case Docket No. 1239]

Exhibit 6            FairPoint's Motion to Estimate Proofs of Claim filed by Defendants [Main
                     Case Docket No. 1477] (without Exhibits B through H)

Exhibit 7            Order Granting FairPoint's Motion to Estimate Proofs of Claim filed by
                     Defendants [Main Case Docket No. 1679] (without Exhibits B and C)

Exhibit 8            FairPoint's Bankruptcy Rule 2004 motion [Main Case Docket No. 1789]
                     (without exhibits)

Exhibit 9            Defendants' Objection to FairPoint's Bankruptcy Rule 2004 motion [Main
                     Case Docket No. 1803] (without exhibits)

Exhibit 10           Defendants' Bankruptcy Rule 2004 motion [Main Case Docket No. 1940]
                     (without exhibits)

Exhibit 11           Declaration of Jeremy L. Katz in Support of Defendants' Objection to
                     FairPoint's Bankruptcy Rule 2004 motion [Main Case Docket No. 1803]
                     (without exhibits)

Exhibit 12           *MetroPCS Wireless, Inc. v. Community Voice Line*, No. 11-CV-00501-JFM,
                     Memo to Counsel (D. Md. Jul. 6, 2011)