Luc A. Despins, Esq.
James T. Grogan, Esq.
PAUL HASTINGS LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Counsel to the Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **FAIRPOINT COMMUNICATIONS, INC.,** *et al.,*: | | **Case No. 09-16335 (BRL)** |
|  | : |  |
| **Reorganized Debtors.** | : | **(Jointly Administered)** |
|  | : |  |

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
|  | : |  |
| **FAIRPOINT COMMUNICATIONS, INC.,** | : |  |
| **NORTHERN NEW ENGLAND TELEPHONE** | : |  |
| **OPERATIONS LLC AND** | : | **Adv. Proc. No. 11-01759 (BRL)** |
| **TELEPHONE OPERATING COMPANY OF** | : |  |
| **VERMONT LLC** | : |  |
|  | : |  |
|  | : |  |
| **Plaintiffs,** | : |  |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **SEGTEL, INC. AND** | : |  |
| **SEGNET TECHNOLOGIES, INC.** | : |  |
|  | : |  |
| **Defendants.** | : |  |

---------------------------------------------------------------x

**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' REPLY TO**
**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

FairPoint Communications, Inc., Northern New England Telephone Operations LLC and

Telephone Operating Company of Vermont LLC (collectively, "FairPoint") hereby file this

sur-reply to *Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss* [Docket No. 21,

the "<u>Reply</u>"], as set forth in the attached <u>Exhibit A</u>.

Dated: August 18, 2011
     New York, New York

    By:<u>/s/ James T. Grogan</u>_____
     Luc A. Despins, Esq.
     James T. Grogan, Esq.
     PAUL HASTINGS LLP
     Park Avenue Tower
     75 E. 55th Street, First Floor
     New York, NY 10022
     Telephone: (212) 318-6000
     Facsimile: (212) 319-4090

     *Counsel to the Plaintiffs*

## Exhibit A

### I.  Defendants' Reply Is Not Responsive to the Opposition Brief, and Misstates the Law and the Facts

The Reply is not responsive to FairPoint's opposition brief and misstates the law and the facts of the case for the following reasons:

1.  The Reply fails to address how, under *Stern v. Marshall*, FairPoint's counterclaims are "core" proceedings that either "arise in" and/or "arise under" title 11 by definition.

2.  Now that FairPoint has pointed out the fundamental deficiencies in the Motion, the Reply seeks to disclaim *Defendants' prior assertion in the Motion* that FairPoint's counterclaims are "inextricably intertwined" with the allowance of Defendants' proofs of claim.  As FairPoint showed in its Opposition Brief, if the Proofs of Claim and the Counterclaims are "inextricably intertwined," then FairPoint's counterclaims must "relate to" the implementation and execution of the Plan's claims allowance provisions.  As such, the Counterclaims would satisfy the requirements for "related to" jurisdiction, even using the Defendants' erroneous interpretation of the law.

3.  In any event, the Defendants' arguments about "related to" jurisdiction apply the wrong test and get the facts wrong for the same reasons set forth in the Opposition Brief.

4.  Defendants' arguments about primary jurisdiction invite this Court to avoid consideration of threshold legal issues so that Defendants can embroil the Plaintiffs in a colossal waste of time litigating in three states and the FCC even though the Second Circuit has repeatedly held that these kinds of issues must be litigated in this Court.  Defendants still have not identified any issue that <u>requires</u> answers to technical or policy questions.  The Reply is another transparent attempt to delay resolution and increase costs.

## II. FairPoint's Response to Specific Allegations by Defendants

| | Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|---|
| | **Subject Matter Jurisdiction Arguments** | |
| 1. | "Counts 11 to 17 of the Plaintiffs' Complaint were asserted for the first time following the effective date of the Plan and this Court, therefore, does not have jurisdiction over most of them." Reply, at 2. | Defendants continue to apply the wrong legal standards and obfuscate the issues:<br><br>• FairPoint's counterclaims are "core" proceedings that by definition "arise in" or "arise under" title 11. *See Stern v. Marshall*, 131 S. Ct. 2594 (2011)*; Bankruptcy Servs., Inc. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 466 (2d Cir. 2008). The test for "related-to" jurisdiction and the fact that FairPoint filed its complaint after the effective date of the Plan is utterly irrelevant.<br><br>• Defendants primarily rely on *In re Fairchild Corporation*, a Delaware bankruptcy case, which addresses the parameters of **"related-to" jurisdiction** after plan confirmation. Even if this Delaware case were persuasive, the Third Circuit has expressly held that the test for "related-to" jurisdiction is inapplicable to "core" proceedings that "arise in" or "arise under" title 11. *See Geruschat v. Ernst Young LLP (In re Seven Fields)*, 505 F.3d 237, 260 (3d Cir. 2007). Defendants' arguments don't even work in Delaware.<br><br>• Defendants' reliance on *Peerless* is misplaced. *Peerless* is inapposite on its facts. Peerless acquired the Debtors' assets through a plan and offered creditors stock in Peerless in exchange for their claims. The court considered whether the reorganization plan could be modified *8 years* after confirmation to allow a claim for the stock that was time-barred *5 years* earlier. *N. Am. Car Corp. v. Peerless* |

| Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|
| | *Weighing & Vending Mach. Corp.*, 143 F.2d. 938, 939-940 (2d. Cir. 1944). |
| | • Defendants ignore that the *Peerless* court found that "the court must retain some jurisdiction after confirmation of a plan to see that it is consummated. We have, therefore, pointed out the existence of such complementary and auxiliary jurisdiction of the court to protect its original confirmation decree, prevent interferences with the execution of the plan, and otherwise aid in its operation." *Id.* at 940. The *Peerless* court expressly held that "questions of reopening time limits for the presentation or other adjustment of claims must rest very largely in the sound discretion of the court, as we have recently held...." *Id.* |
| | • Defendants' assertions are also factually wrong. FairPoint's claims were not raised for the first time after the Plan effective date. FairPoint filed a motion for 2004 discovery and Defendants also filed a motion for 2004 discovery, both of which addressed FairPoint's claims against Defendants. |
| 2. | FairPoint's counterclaims do not meet the test outlined in *General Media*: "(1) a close nexus to the bankruptcy plan or proceeding and (2) the plan must provide for the retention of jurisdiction over the dispute." Reply, at 4.<br><br>Close-nexus: "A close nexus exists only if the recovery will go to creditors. Here, any recovery from the Affirmative Counterclaims would go to Reorganized | Defendants continue to apply the wrong legal standards to the issues presented, and along the way, get the standards wrong.<br><br>• The close-nexus test outlined in *General Media* only applies to **"related-to" jurisdiction.** A bankruptcy court can only have "related to" jurisdiction over a non-core matter. *Stern v. Marshall*, 131 S. Ct. at 3605. As such, since FairPoint's counterclaims are "core" matters "arising in" or "arising under" title 11, the *General Media* close- |

| Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|
| FairPoint and not the estate…."  Reply, at 4.<br><br>Retention of Jurisdiction in Plan:  "In sum: (1) the plan must *specifically* retain jurisdiction over the matter to be adjudicated subsequent to confirmation; (2) jurisdiction cannot go beyond the grant provided for in Section 1334 even if provided for in the plan; and (3) post-confirmation jurisdiction is limited to matters that concern the implementation and execution of the plan, which requires a close nexus to a bankruptcy plan or proceeding."  Reply, at 5 (emphasis in original). | nexus test is inapplicable here.<br><br>• Even if Defendants were right, FairPoint meets the close-nexus test.<br><br>   i.  Close-Nexus Test:  Defendants have already recognized that FairPoint's claims are "inextricably intertwined" with Defendants' proofs of claim. FairPoint's claims against Defendants *implement and execute* the Plan's claims-allowance provisions. The Defendants have asserted claims for, among other things, disputed bills, refunds, credits and interest on resolved billing disputes.  ***It is impossible for the Court to determine whether Defendants' alleged billing disputes have merit without also considering FairPoint's bills – i.e. FairPoint's claims.***  FairPoint's counterclaims are part and parcel of the resolution of Defendants' claims, as described more fully in FairPoint's opposition brief.<br><br>   ii.  Retention of Jurisdiction in Plan:  Defendants continue to blatantly ignore the requirements in this circuit for retaining jurisdiction in a plan.  In the Second Circuit, a broad retention of jurisdiction in a plan is sufficient.  *See, e.g., Norman Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 569 (S.D.N.Y. 2003) (holding that a general reservation of causes of action in a reorganization plan was sufficient to preserve reorganized debtor's ability to pursue that cause of action post-confirmation); *aff'd*, 104 Fed.Appx. 199 (2d Cir. |

| | Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|---|
| | | 2004); *see also* FairPoint's opposition brief to Segtel's motion to dismiss, at 24-27 (evaluating in depth the FairPoint plan provisions that retained jurisdiction over this matter and cases cited by Defendants regarding this issue). |
| | | iii. Tellingly, Defendants do not cite to a single case in the 2nd Circuit that supports their proposition that a reorganization plan must *specifically identify a cause of action* to reserve jurisdiction. The only 2nd Circuit case Defendants cite to in support of this proposition is *In re Johns-Manville Corp.* and Defendants completely misconstrue its holding. In that case, the bankruptcy court did not have jurisdiction over certain property damage claims because the plan "explicitly excepted objections relating to timely filed property damage claims from the post-confirmation jurisdiction of the bankruptcy court." *See Hospital & Univ. Property Damage Claimants v. John-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d. Cir. 1993). This is simply not the case here. FairPoint's plan *does not exclude* claims against Segtel from being brought post-confirmation. |
| 3. | "[T]he Court should dismiss Plaintiffs' claims to the extent that they seek to recover allegedly unpaid bills dating after the effective date of the Plan." Reply, at 7.<br><br>"Each bill that Plaintiffs claim Defendants failed to pay in full creates a new claim, similar to failure to pay on an | • Defendants are essentially trying to "cap" FairPoint's damages by conflating the existence of a claim with the amount of damages that Plaintiffs have incurred. Defendants have not cited any authority that suggests a debtor must initiate *two* lawsuits to collect on *one* account simply because a defendant refuses to start paying its bills |

| Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|
| installment contract."  Reply, at 7. | once a plan is confirmed.<br><br>• The case cited by Defendants, *Davel Communications, Inc. v. Qwest Corp.*, has nothing to do with jurisdiction, but rather concerned the application of a statute of limitations. FairPoint's claims did not arise post-confirmation as evidenced by the purported "billing disputes" described in the Defendants' proofs of claim. |
| **4.**  The Bankruptcy Court does not have jurisdiction over FairPoint's counterclaims under *Stern v. Marshall* because they are "state law claims that FairPoint brings as counterclaims to Defendants' proofs of claim.  Their resolution is not dependant on bankruptcy law and they will not 'necessarily' be resolved by a ruling on Defendants' proofs of claim." Reply, at 8.  (emphasis added).<br><br>FairPoint's counterclaims do not comport with *Stern v. Marshall*  because "Defendants' proofs of claim assert a number of different claims against Plaintiffs arising under the terms of agreements, federal and state tariffs, federal and state statutes, and common law, all based on Plaintiffs' pre-petition conduct.  Defendants' Affirmative Counterclaims, on the other hand, seek to recover sums allegedly owed by Defendants for services purchased over several years, including pre-petition, post-petition, and post-confirmation time periods."  Reply, at 8. | • Defendants conveniently disavow their prior assertion that "[t]he issues raised by Defendants' and Plaintiffs' pre-petition claims are **inextricably intertwined** with Plaintiffs' Post-Petition and Post-Confirmation Claims." Defendants' motion to dismiss, at 18.  Nevertheless, resolution of FairPoint's counterclaims necessarily resolves Defendants' proofs of claim.<br><br>• Defendants also misapply *Stern v. Marshall*.  FairPoint does not need to assert a counterclaim to each allegation contained in Defendants' proofs of claim for this Court to have "core" jurisdiction under *Marshall*.  This Court has jurisdiction because (1) Defendants claimed that they overpaid FairPoint and are due credits and refunds, and (2) FairPoint disputes those claims and contends that Defendants have, in fact, underpaid for the same services. Either one or the other – but not both – is correct.  The counterclaims are "necessarily" resolved by a ruling on the Defendants' proofs of claim. |

| Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|
| **Primary Jurisdiction Arguments** | |
| 5. FairPoint did not address whether Counts 13, 14 or 16 should be stayed pending litigation in regulatory agencies. FairPoint's opposition fails to show why this Court should enmesh itself in technical and policy issues under the federal telecommunications laws that Congress entrusted to the FCC and the state PUCs. Reply, at 9. | Defendants' distinction is immaterial. Count 13 is a cause of action for equitable accounting and Count 14 is an action for turnover, both of which derive from the basic billing disputes at issue in Defendants' proofs of claim.

Count 16 is a request for a declaratory judgment on the issue of cure owed (if any) to Defendants. Cure is a threshold legal issue; if cure is not owed to Defendants under the various tariffs and agreements, the claims should be reduced or disallowed in their entirety. These are not issues that should be stayed pending litigation elsewhere.

Further, the Court need not become enmeshed in technical and policy questions because the Court can adjudicate Defendants' claims *as a matter of law*:

- Defendants have waived these claims under the provisions of contracts and tariffs. *See* FairPoint's complaint, at ¶ 152-161.

- The Plan precludes Defendants' claims as described in Counts 3 and 16 of FairPoint's complaint. *See* FairPoint's complaint, at ¶109-119; FairPoint's complaint, at ¶265-273

- Defendants' claims are barred by the filed tariff doctrine. *See* FairPoint's complaint, at ¶ 160.

- The disputes at issue are matters of contract enforcement |

| | Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|---|
| | | and interpretation. *See* FairPoint's complaint, at ¶ 229-242. |
| | | • segNET Technologies Inc. is not even covered under the Communications Act. *See* FairPoint's complaint, at ¶ 178-183. |
| | | • Defendants have identified no state law causes of action for competitive violation claims. *See* FairPoint's complaint, at ¶ 184-188. |
| | | • The Communications Act does not provide a private cause of action for damages. *See* FairPoint's complaint, at ¶ 189-192. |
| 6. | "FairPoint mistakenly contends that Counts 8A, 8B, 8C, 8D, and 8G, which address Defendants' competitive violation claims based on violations of the Communications Act, should not be referred to expert agencies because this Court should first resolve a "threshold question of whether Defendants, under the applicable agreements, have the right to seek any damages *at all* under their theory." Reply, at 10-11. (emphasis in original). <br><br> "The adjudicator must first examine the issues in counts 8B, 8C, 8D, and 8G, all of which raise FairPoint's defenses to *liability*, and only if liability is found, proceed to consider Count 8A, which raises FairPoint's defenses to *damages*." Reply, at 12 (emphasis in original). | • This argument is nonsensical. Based on the issues of law described above, FairPoint is neither liable to Defendants nor does it owe money damages. <br><br> • Liability and damages cannot be *divorced* under section 502(b) of the Bankruptcy Code. The Court "shall determine the amount of [a] claim in lawful currently of the United States as of the date of the filing of the petition." 11 U.S.C. § 502(b). Further, section 502(b)(1) of the Bankruptcy Code states that the Court must disallow the claim if such claim "is unenforceable against the debtor." 11 U.S.C. § 502(b)(1). If the Defendants cannot *enforce* their claims against FairPoint, then those claims must be disallowed. <br><br> • By arguing that an adjudicator must examine liability even if there is no right to payment, Defendants invite an advisory opinion. That notion is contrary to the |

| | Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|---|
| | | Bankruptcy Code and the "cases and controversies" requirement of the Constitution. |
| 7. | "FairPoint is wrong that that the applicable tariffs and contracts bar incidental and consequential damages [because] *where FairPoint is negligent* (as Defendants contend) *there is no limitation on FairPoint's liability*.  In other instances the contract language does not bar incidental and consequential damages in cases of willful misconduct, which Defendants also contend is present.  In addition, in New Hampshire, where the majority of Defendants' claims arose, as in most states, a contractual waiver of a party's fraud is unenforceable against public policy."  Reply, at 11 (emphasis in original). | • This Court established the bar date for claims as March 18, 2010.  In Defendants' proofs of claim, ***Defendants never alleged negligence, willful misconduct or fraud.***  Defendants cannot now raise **new tort claims** against FairPoint in a reply brief after FairPoint pointed out deficiencies in Defendants' proofs of claim.<br><br>• In any event, this argument does not support primary jurisdiction.  Regulatory agencies are not the designated "experts" in the American legal system to determine whether a party acted negligently, willfully or fraudulently.  Judges are. |
| 8. | "FairPoint is wrong that 'costs incurred to obtain alternative services' are precluded…. [These] are not 'indirect, incidental, consequential, reliance or special damages, including (without limitation) damages for lost profits'….Rather they are conventional 'cover' damages." Reply, at 12. | • This is a legal issue for the Court, not regulatory agencies. |
| 9. | "FairPoint incorrectly claims that Counts 4, 5, 10 should not be referred on grounds of primary jurisdiction because they involve routine enforcement of contract or tariff provisions." Reply, at 13.  Defendants assert the following arguments:<br><br>• Count 4: Resolution of billing dispute requires technical expertise.  Reply, at 13. | Count 4. Billing Dispute Claims<br><br>• Disputing FairPoint's bills is not a claim under section 101(5) of the Bankruptcy Code.  Billing disputes do not give rise to a "right to payment."  This is a purely legal issue of federal bankruptcy law that does not require regulatory input simply because Defendants invoke the Communications Act. |

| | Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|---|
| | • Count 5: No argument.<br><br>• Count 10: PAP claims are complex ad require state PUC review. Reply, at 13-15. | <u>Count 5</u>.  No response necessary.<br><br><u>Count 10</u>. PAP Claims.  The Defendants' Rule 7026 initial disclosures attached as <u>Exhibit B</u> (relevant excerpts) have revealed that Segtel's PAP claims consist of the following:<br><br>• $1,106,796 in PAP claims that are nothing more than a "best-guess estimate" by Segtel.<br><br>• $141,713.29 that "FairPoint has credited"<br><br>• $247,792.02 that has been applied to open Segtel accounts; and<br><br>• $380,279.64 that is simply Segtel "reserving its rights to a true-up."<br><br>Segtel's PAP claims are either based entirely on conjecture and speculation – or have been satisfied  –  and should be disallowed by the Court, not referred to another forum.<br><br>Moreover, Segtel's "claims" for PAP credits are entirely **duplicative** of any credits that state PUCs may independently require under the PAP programs.  **FairPoint has, and will continue to, honor any PAP credits that are required to be issued by a state PUC.**  Segtel has not been deputized by state governments to assert claims based on PAP credits.  If allowed to proceed, Segtel's claims would have the potential to create an impermissible double recovery because FairPoint could be forced to satisfy the Proof of Claim and issue credits required by state PUCs.  There is no cause for referral to a state PUC over claims that are redundant at best, and that seek "damages" |

| | Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|---|
| | | pulled from thin air. |
| 10. | Count 17 is based on entirely post-confirmation conduct, and should be referred to the agencies because "the tariffs incorporate a requirement of a 'proven history of late payments,' a term that implicates agency expertise, before a deposit can be imposed."  Reply 15-16. | • Count 17 addresses non-payment by Defendants over a period of years, not just the post-confirmation period.  Defendants' assertion completely ignores 2nd Circuit precedent, cited in FairPoint's opposition papers, holding that whether a party has timely paid its bills is a simple factual question that can easily be resolved by a court.  *See* FairPoint's opposition brief, at 38. |
| 11. | Referral will not result in additional costs, delay or complexity because (1) "neither FairPoint nor Defendants will need to devote substantial resources to explain fundamental issues [to the Court]," and (2) "discovery before the FCC is very limited and likely to require fewer resources than in matters before this Court."  Reply, at 17. | • It is irrational to assume that litigation in ***five different forums*** will not result in additional costs, delay or complexity.  <br><br>• Defendants' arguments ignore the threshold legal issues that preclude Segtel's claims as a matter of law.  It would be an extraordinary waste of resources not to consider these legal issues as an initial matter.  FairPoint intends to promptly seek summary adjudication of Defendants' claims, which will substantially narrow the issues presented in this adversary proceeding. |
| | **Defendants' Opposition to FairPoint's Countermotion** | |
| 12. | Countermotion is unsupported, premature and not properly before the Court.  <br><br>"Defendants' Motion and Plaintiffs' Countermotion present different issues and Plaintiffs' briefing in opposition to Defendants' Motion simply does not present an adequate basis to grant Plaintiffs' Countermotion." | • Defendants do not at all explain why the countermotion is premature.  <br><br>• The Supreme Court, in *Stern v. Marshall*, has provided clear guidance to federal courts regarding core and non-core matters.  This is simply a matter of applying that precedent to claims that are by Defendants' own admission |

| | Defendants' Main Arguments In the Reply | FairPoint's Sur-Reply |
|---|---|---|
| | Reply, at 18. | "inextricably intertwined" with FairPoint's counterclaims. |
| | | • The entirety of FairPoint's complaint either involves the claims allowance process, or involves issues relating to the assumption of contracts pursuant to FairPoint's reorganization plan. |
| 13. | "Plaintiffs purported to file that motion without obtaining a hearing date on their motion and without citing the rules supporting the motion, as required by Rule 9013-1. Reply, at 18. | • Rule 9013-1 requires citation to applicable rule *or statute*. FairPoint specifically cited to 28 U.S.C. §157(b)(3). See FairPoint's opposition brief, at 45. Defendants' argument that the Court should hold *two* hearings regarding this Court's jurisdiction is just another one of its many ill-conceived ideas to delay prompt resolution of this case and increase costs. |
| 14. | Judges Bernstein and Glenn have found that the post-confirmation distinction between core and non-core 'may not be particularly relevant after confirmation.'" Reply, at 18. | • This statement, in *dicta*, could just as easily be read to mean that the distinction between core and non-core *may or may not be* particularly relevant. Here, the distinction is relevant in light of the *Marshall* decision because it clarifies that the Court's jurisdiction "arises in" title 11 where FairPoint's counterclaims are "inextricably intertwined" with the Defendants' proofs of claim |

# **Exhibit B**

Schuyler G. Carroll
Jeffrey D. Vanacore
Perkins Coie LLP
30 Rockefeller Plaza, 25th Floor
New York, NY 10112
212.262.6900

-and-

Jeanette L. Thomas
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
503.727.2000

Attorneys for Defendants segTEL and segNET Technologies, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------- X
In re:                                :   Chapter  No. 11
                                      :
FAIRPOINT COMMUNICATIONS, INC., et    :
al.,                                  :   Case No.: Case No. 09-16335 (BRL)
                                      :
            Reorganized Debtors       :
                                      :
                                      :
                                      :
------------------------------------- X
FAIRPOINT COMMUNICATIONS, INC.,       :   Adv. Proc. No. 11-01759 (BRL)
NORTHERN NEW ENGLAND TELEPHONE        :
OPERATIONS LLC AND TELEPHONE          :
OPERATING COMPANY OF VERMONT          :
LLC,                                  :
                                      :
            Plaintiffs,               :
                                      :
      v.                              :
                                      :
SEGTEL, INC. AND SEGNET               :
TECHNOLOGIES, INC.,                   :
                                      :
            Defendants.               :
------------------------------------- X
```

**segNET TECHNOLOGIES, INC. AND segTEL, INC.'S INITIAL DISCLOSURES
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE (26)(a)(1)**

Defendants segNET Technologies, Inc. ("segNET") and segTEL, Inc. ("segTEL"
and together with segNET, "Defendants"), through their undersigned attorneys, provide the
following initial disclosures in accordance with Fed. R. Civ. P. 26(a)(1). These disclosures are
based on the information in the Defendants' possession, custody, and control, as well as that
which could be ascertained or acquired at this point in the litigation by reasonable inquiry and
investigation. The Defendants reserve the right to supplement this disclosure in accordance with
Rule 26(e) upon learning new or different information.

**I.      Individuals Likely to Have Discoverable Information that May Be Used by
         Defendants to Support Its Claims or Defenses**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), Defendants identify the following individuals
likely to have discoverable information that may be used to support Defendants' claims or
defenses.

1. Steve Goldsmith, PO Box 610, Lebanon NH 03766, 603 676-8222

   Mr. Goldsmith will testify on subjects including but not limited to pole surveys, make-
   ready and licensing, applications for and implementation of collocation in FairPoint COs,
   applications, maintenance and repair of FairPoint dark fiber UNEs, access to FairPoint
   COs, poles, conduit and manholes, FairPoint service outages, problems ordering UNEs or
   converting services to UNEs and/or resale, failures of the FairPoint OSS, loop
   qualifications, failures regarding off-net DSL processes, applications for collocation and
   dark fiber, and FairPoint interference with customer relationships.

2. Jeremy Katz, PO Box 610, Lebanon NH 03766, 603 676-8222

   Mr. Katz will testify on subjects including but not limited to both segTEL and segNET
   claims and provide information regarding service outages, problems ordering UNEs or
   converting services to UNEs and/or resale, dark fiber, billing disputes, performance under
   the segNET Settlement Agreement, performance under the 2008 Settlement Agreement,
   operational issues such as accessing COs, poles, conduit and manholes, applications for
   collocation, FairPoint interference with customer relationships and slander against
   segNET and segTEL, and damages.

3. Josh Brunelle, PO Box 610, Lebanon NH 03766, 603 676-8222

42512-0004/LEGAL21384690.1

**Claim II.D.     PAP Credits**

segTEL v NNETO

| | | | |
|---|---|---|---|
| 1 | April 1, 2008 – February 2009 | $1,106,796.00 |
| 2 | Failure to Credit PAP Penalties | $ 141,713.29 |
| 3 | Misapplied PAP credits | $ 247,792.02 |
| 4 | Failure to Audit PAP | $ 389,279.64 |

For items 1-4, *see* Discovery Resp 12 segTEL BATES 532-541, Discovery Resp 13 segTEL BATES 542-665, Discovery Resp 14 segTEL BATES 666-995, and Discovery Resp 15 segTEL BATES 996-1062.

segTEL may also rely on documents provided in Discovery Resp 34 segTEL BATES 15920-16335.


(1) <u>April 1, 2008 – February 2009</u>  segTEL based this claim on the fact that it had received no PAP reports from April 1, 2008 through February 2009, and made a best-guess estimate based on FairPoint's poor performance regarding segTEL's orders during that time frame of what the maximum PAP penalties might have been.  Subsequently, on February 16, 2011, FairPoint provided copies of the November 2008 and December 2008 PAP reports, showing credits due to segTEL in the amounts of $202.77 and $408.12, respectively.  segTEL has not been able to confirm that the amounts showing on the PAP reports FairPoint provided were credited to segTEL invoices.  FairPoint claims that there were no other PAP reports or penalties from this time period.  segTEL has been unable to confirm this.

 segTEL reserves the right to further supplement this response as needed in light of further facts learned in discovery and further facts from expert witnesses.


(2) <u>Failure to Credit PAP Penalties</u>  segTEL calculated this item based on FairPoint's PAP reports and penalty calculations from January 2009 through the petition date, amounts which did not appear on segTEL invoices as credits.  Subsequently, FairPoint has credited segTEL invoices for several of these amounts.

 segTEL reserves the right to further supplement this response as needed in light of further facts learned in discovery and further facts from expert witnesses.


(3) <u>Misapplied PAP credits</u>  At petition, segTEL had requested transfers of PAP credits in order to apply the credits to open invoices.  FairPoint was, at that time, refusing to do such transfers, or, on occasion, agreeing to do the transfers and then doing them incorrectly.  Subsequently, FairPoint has allowed segTEL to transfer PAP credits and apply them to open invoices.

 segTEL reserves the right to further supplement this response as needed in light of further facts learned in discovery and further facts from expert witnesses.


(4) <u>Failure to Audit PAP</u>  The PAP developed and implemented by NNETO has not been submitted for review or audit to the Public Utility Commissions of Maine nor the FCC.  New Hampshire is now in the process of scheduling such an audit.  segTEL is, by this claim, reserving its rights to a true-up of amounts owed under the PAP

should such review and audit show that NNETO misrepresented its performance. This is an estimated amount based on the PAP results between January 2009 and October 2009.

segTEL reserves the right to further supplement this response as needed in light of further facts learned in discovery and further facts from expert witnesses.

**Claim II.E.**   **Competitive Violation Claims**
segTEL v NNETO

| | | |
|---|---|---|
| (1) | Fiber Optic cable into NNETO COs | $ 135,000 |
| (2) | Failure to provide access to UNEs | $ 40,000 |
| (3) | Failure to provide timely access to poles | $ 120,000 |
| (4) | Failure to allow manhole breakouts | $ 35,000 |
| (5) | Failure to provide timely licenses for poles | $ 24,000 |
| (6) | Failure to provide a working OSS | $ 32,000 |
| (7) | Failure to provide loop qualification | $ 48,000 |
| (8) | Failure to provide timely collocation | $ 60,000 |
| (9) | Discriminatory pole attachment rates | $ 106,562 |
| (10) | Discriminatory pole attachment practices | $ 176,000 |
| (11) | Failure to provide resale | $ 22,400 |
| (12) | Failure to provide DSL resale | $ 8,000 |
| (13) | Failure to provide SPUNE conversions | $ 108,800 |

(1)   Fiber Optic cable into NNETO COs

*See* Discovery Resp 16 segTEL BATES 1063-1136 for correspondence between segTEL and FairPoint and for tariff pages regarding collocation relevant to this item. segTEL may also rely on documents provided in Discovery Resp 34 segTEL BATES 15920-16335.

segTEL may rely on FairPoint tariffs described above, as well as Commission rules and orders described above in support of this claim.

segTEL may rely on the segTEL/FairPoint ICA in support of this claim.

segTEL may rely on state and federal statutes in support of this claim.

segTEL's baseline calculation of this amount is derived from an analysis that compiles the sum of (a) additional fees that segTEL had to pay to third party vendors for leased services that were unable to be cancelled until the work was completed, plus (b) contracted revenue derived but unavailable to segTEL because it was prevented from installing services by virtue of NNETO's violations. These claims may be substantially larger based upon expert analysis and discovery results.

segTEL reserves the right to further supplement this response as needed in light of further facts learned in discovery and further facts from expert witnesses.

(2)   Failure to provide access to UNEs

*See* Discovery Resp 17 segTEL BATES 1137-2206 and also BATES 5408 for correspondence between segTEL and FairPoint, New Hampshire Commission rulings regarding provision of dark fiber and segTEL's applications for UNE dark fiber relevant to this item.

other action, on the grounds of relevancy, competency, materiality, admissibility, hearsay or for any other reason. Further, Defendants provide these disclosures without waiving any claim of privilege or work-product immunity.

By making these disclosures, Defendants do not represent that they have identified every witness that they may use to support their claims or defenses. Rather, these disclosures represent a good-faith effort by Defendants to identify information presently available to them that falls within the scope of Rule 26(a)(1)(A). As such, these disclosures do not include information that may be used solely for impeachment purposes.

Dated: New York, New York
     July 22, 2011

Respectfully submitted,

PERKINS COIE LLP

By _____
    Schuyler G. Carroll
    Jeffrey D. Vanacore
    30 Rockefeller Plaza, 25th Floor
    New York, NY 10112
    212.262.6900

    - and -

    Jeanette L. Thomas
    1120 N.W. Couch Street, Tenth Floor
    Portland, OR 97209-4128
    503.727.2000

Attorneys for Defendants segTEL and segNET Technologies, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 18, 2011, I caused a true and correct copy of the foregoing

*Plaintiffs' Sur-Reply to Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss* to be

delivered by email and overnight courier to the following:

Schuyler Carroll, Esq.
Jeffrey D. Vanacore, Esq.
PERKINS COIE LLP
30 Rockefeller Plaza, 25th Floor
New York, New York 10112
Telephone:  212.262.6905
Facsimile:  212.977.1636
Email: SCarroll@perkinscoie.com

and

Lawrence H. Reichman, Esq.
Jeanette L. Thomas, Esq.
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222
Email: JThomas@perkinscoie.com

*Attorneys for Defendants,*
*segTEL, Inc. and segNET Technologies, Inc.*

Dated: August 18, 2011
        New York, New York

                                By:/s/  Sung Ho Choi        _____